### J. P. GIBBS v. THE STATE.

*No. 3875.  Decided December 22.*

**New Trial to Obtain Testimony of Acquitted Codefendant.**—In Rucker v. The State, 7 Texas Court of Appeals, 549, it is said: "There can be no doubt at this day as to the rule, or the correctness of the rule, in proper cases, as now established in this State, that where two are jointly indicted, and one is tried and convicted and subsequently the other is tried and acquitted, a new trial will be granted the former to obtain the testimony of the latter where it appears that the new evidence is legal and competent and material to his defense."

APPEAL from the District Court of Williamson. Tried below before Hon. Wm. M. Key.

Appellant was jointly indicted with one John Gibbs and one Andrew Sutton for the murder of Vitola Molena, Sallie Molena, and Mertez Molena, by shooting them with guns and pistols. All the parties were placed jointly upon trial, but after the evidence for the State was adduced, on motion of the district attorney the prosecution as to John

Gibbs was dismissed. As the result of the further trial Andrew Sutton was acquitted by the verdict, and this appellant J. P. Gibbs was convicted of murder in the first degree, with his punishment assessed at a life-term in the penitentiary.

The parties killed were Mexicans, and the killing occurred about 11 o'clock on Monday night, July 1, 1890. The Mexicans lived on the place of P. J. Humphreys. Defendant was a renter, and lived upon the place of one Miller. The two houses were nearly opposite each other, were some seventy-five or one hundred yards apart, and a lane or road passed along between them.

The chief inculpatory facts against the defendant, as shown by the evidence, were, that on the Tuesday before the killing appellant borrowed of Humphreys a 38-caliber Winchester, which had ten cartridges in the magazine; and defendant told Humphreys that he wanted the gun because he had seen some parties prowling around his house late at night whom he thought were Mexicans. Appellant had a deaf and dumb daughter about grown, and on Friday evening before the killing defendant went to Humphreys and told him that his deaf and dumb daughter was missing, and that he thought she had run off with some Mexicans. The principal State's witness, Florence, the daughter of Molena, testified, that on Friday night defendant and his son-in-law, Andrew Sutton, came to their house, inquired for the missing girl, and told her mother that if the girl did not come up in three days none of their family would live any longer. She describes the killing on Monday night; says the whole family were sleeping out of doors, on the north side of the house, on some planks, when, about 11 o'clock, she was aroused by the firing of guns; that it was a moonlight night, and she saw and knew who did the shooting; that it was old man Gibbs, the defendant; and that after he did the killing he ran off northward through the potato patch. At the scene of the killing several empty 38-caliber Winchester cartridge shells where picked up, and shells were found to be missing afterward from the Winchester that Humphreys had loaned to Gibbs, and one cartridge was found lodged in the gun and unexploded. Tracks were also found northward from Molena's house, in the potato patch, which tracks defendant did not deny were made by him, but said that he had made them a day or so before while going to and from his work to the well near by. He was corroborated in this statement of his having been at work out there at the time he said that he had.

The defense was an *alibi*. Defendant proved by his daughter and son, who were at his house that night, that he (defendant) had gone off sometime after supper to the house of his son-in-law, Andrew Sutton, some quarter of a mile distant, to see Sutton in regard to some work which Sutton had promised to do for him next day. That the Winchester rifle was left by defendant under the head of the bed in which

his son slept that night while he was at Sutton's, and that it was not taken from that place until after the alarm occasioned by the shooting, which said alarm caused appellant to return home, get his gun, and go with others to the scene of the killing. Mrs. Sutton testified, that after she and her husband had gone to bed at her house, defendant came there, sat down on the doorstep, and when she went to sleep he and Sutton were still talking. That she was awakened by the shots, and heard her father exclaim, "Good Lord, it is over in the direction of my house!" and then he ran off in that direction.

In support of the motion for a new trial, the codefendant Andrew Sutton, who had been acquitted, made an affidavit, in which he fully corroborated defendant's witnesses in regard to the *alibi*, and concluded his affidavit in these words: "I swear, and have always said, that when this shooting began old man J. P. Gibbs (appellant) was sitting in my door, four or five hundred yards from the place where the Mexicans were killed."

No briefs on file for either party.

WHITE, PRESIDING JUDGE.—The indictment in this case was a joint one for murder against J. P. Gibbs, John Gibbs, and Andrew Sutton, and the parties were put upon their trial jointly. The result of the trial was, that after the evidence for the State had been submitted, the district attorney made a motion, which was granted by the court, and the prosecution, in so far as defendant John Gibbs was concerned, was dismissed. As to the defendant Andrew Sutton, the verdict of the jury was, that he was not guilty, and he was discharged. This appellant was convicted of murder in the first degree, and his punishment assessed at a life-term in the penitentiary.

In his motion for a new trial, among other grounds stated in said motion was, that the new trial was sought in order that defendant might obtain the testimony of his codefendant Andrew Sutton, who had been jointly tried with him, and who had been acquitted; and in support of this ground of the motion he sets forth the affidavit of said Andrew Sutton, stating in full what his testimony would be upon another trial of the case. This testimony, as set forth in the affidavit of Sutton, is certainly most material and important to defendant, and we can not say that it would or should be disregarded on account of Sutton's supposed complicity in the commission of the crime, nor that it will not probably change the result of the case on another trial.

In Rucker *vs.* The State, 7 Texas Court of Appeals, 549, it is said: "There can be no doubt at this day as to the rule, or the correctness of the rule, in proper cases, as now established in this State, that where two are jointly indicted, and one is tried and convicted and subsequently the other is tried and acquitted, a new trial will be granted the

former to obtain the testimony of the latter where it appears that the new evidence is legal and competent and material to his defense;" citing Lyles v. The State, 41 Texas, 172; Rich v. The State, 1 Texas Ct. App., 206; Huebner v. The State, 3 Texas Ct. App., 458; Williams v. The State, 4 Texas Ct. App., 5; and Brown v. The State, 6 Texas Ct. App., 286. See the same question discussed subsequently in the cases of Helm v. The State, 20 Texas Ct. App., 41; Barron v. The State, 23 Texas Ct. App., 462; Jones v. The State, 23 Texas Ct. App., 501; Smith v. The State, 28 Texas Ct. App., 309.

Because in our opinion the court should have granted a new trial, and erred in refusing same upon the ground above stated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.