## COX v. STATE.

(Court of Criminal Appeals of Texas. Nov. 1, 1911.)

1. CRIMINAL LAW (§ 940*)—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—WITNESS SUBSEQUENTLY RENDERED COMPETENT.

In a prosecution for burglary, there was evidence by an accomplice as to defendant's participation in the burglary and his subsequent possession of a pistol alleged to have been stolen; but the evidence was practically without corroboration. Subsequent to defendant's trial, a codefendant had been tried and acquitted, and his affidavit, presented on a motion for a new trial, covered every question testified to by the accomplice, and was contradictory to a large part of it. Held, that the evidence which the codefendant would give was material, and entitled defendant to a new trial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2324–2327; Dec. Dig. § 940.*]

2. BURGLARY (§ 34*)—ADMISSION OF EVIDENCE—POSSESSION OF PROPERTY STOLEN.

Where the witnesses of the state, in a prosecution for burglary, testified in regard to some flour that was found at a certain place, and also that they were wholly unable to connect this flour with that taken from the store, the admission of the evidence is error.

[Ed. Note.—For other cases, see Burglary, Cent. Dig. § 85; Dec. Dig. § 34.*]

3. CRIMINAL LAW (§ 677*)—REQUEST FOR WITHDRAWAL OF EVIDENCE—TIME FOR REQUEST.

Defendant in a criminal prosecution may request the court to withdraw evidence from the jury, even after the evidence has been argued.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1605; Dec. Dig. § 677.*]

Appeal from Criminal District Court, Dallas County; Robt. B. Seay, Judge.

Joe Cox, alias Jack Brooks, was convicted of burglary, and he appeals. Reversed and remanded.

C. E. Lane, Asst. Atty. Gen., for the State.

DAVIDSON, P. J. Appellant was convicted of burglary; his punishment being assessed at two years' confinement in the penitentiary.

The state's case, in substance, is that Bibby's store was burglarized on Sunday night, somewhere about 12 o'clock; that is, that operations began at the store about that time, and continued until a couple of loads of goods had been taken from the house. A witness named Reeves was introduced, who makes himself a party to the burglary. He denied entering the house, but connects himself fully with the burglary. He states on the night after he had been asleep at the residence of Mrs. Simpson appellant came in through the window, and woke him up; that he went out of the house with appellant; that appellant was driving a four-seated, two-horse vehicle; that they drove with two other boys, whose names were Boyle, until they reached the store of Mr. Bibby; that they took from the store quite a lot of

things—flour, tobacco, and snuff; that these things were carried away. Some of them were carried, he did not know where, and the second load to a little store in another part of the city, and there left. Among other reasons for stating it was about or before 12 o'clock was that the street cars had not ceased running. Among other things taken from the store was a pistol, and Reeves swears there were two pistols, but only one of them was ever found. None of the other goods seem to have been found about which Reeves testified. The pistol mentioned was found in the house of Mrs. Maginn, who was the mother of the two Boyle boys. Reeves' testimony is to the effect that defendant had the pistol, and there was quite a lot of testimony from him in regard to it. The substance of it all is in effect that it came out of the house, or at least appellant told him that it did, and was left in a light-colored coat at Mrs. Maginn's. This pistol was found at Mrs. Maginn's by the police officers. Mrs. Maginn testified that she found a pistol in a coat hanging in her hall; that she thought the coat belonged to appellant, though he had a new one. Outside of the testimony of the witness Reeves, there is no testimony showing that appellant ever had possession of the pistol. If the coat hanging in the hallway at Mrs. Maginn's was the property of appellant, the fact that it was in the pocket of the coat would be the corroborating fact to connect appellant with the taking of the pistol. This was relied upon by the state as a fact of corroboration of the witness Reeves. It may be stated fairly from this record that with the pistol eliminated there would be no real corroborating fact tending to connect the appellant with the burglary of Bibby's house, and this corroboration is found in the fact that the pistol was found in the coat which was claimed to belong to appellant. Eliminate the evidence in regard to the pistol and the supposed connection of appellant with it, and the witness Reeves will be practically without any corroboration, as we understand this record.

On the motion for new trial, it was urged as a reason why it should be granted that C. J. Boyle, one of appellant's codefendants, had been tried and acquitted subsequent to the trial and conviction of appellant, and that Boyle would testify in direct opposition to everything that Reeves had testified. The affidavit is rather lengthy, and covers every question that Reeves testified in regard to their acting together, and in flat contradiction and denial. He states, for instance, in regard to the pistol, that the morning after the alleged burglary he and his brother went over to the residence of Mrs. Simpson, where appellant and John Reeves were. That shortly after their arrival he and appellant were engaged "in a little friendly game of chance." That Reeves was also in the game, and had lost some money. That after losing his money he got up and went to the door of the room in which he (Reeves) slept, reached up over the door and took down a pistol, and returned to where they were sitting, and stated that he had nothing else to put up on the game, and that he desired to put up his pistol, which he exhibited. None of them, however, had ever seen the pistol before, and Boyle says he knew he had never seen it. That they paid no attention to the offer to bet his pistol, and Reeves turned away and walked into another room, considerably angered because he could not engage further in the game. Witness says that up to the time he and his brother left their home, going to Mrs. Simpson's, neither appellant nor John Reeves had been at Mrs. Maginn's residence. That after the incident above referred to occurred the boys went together to Mrs. Maginn's. That appellant was dressed in a black suit, which he had some time previously bought, and that the night before he was wearing this suit. That Reeves had on a light suit the day before, as well as the day following the burglary, and wore same to Mrs. Maginn's when they left Mrs. Simpson's. This affidavit states appellant did not have the pistol that Reeves had offered to bet; that he was with appellant all the time from the time they had reached Mrs. Simpson's until their return home; that he did not know whether Reeves had the pistol or not, as he did not see the pistol any more after he (Reeves) had exhibited it at the card game. He says after his arrest his mother informed him that she had found the pistol in a light-colored coat hanging in the hallway at her house. He says after he and Reeves and the other boys had gone to his mother's house that Reeves was not in the same room with them, but was in and about the house; that upon his return home from town, it being a warm day, he pulled off his coat, and hung it on the wall, and was arrested before he left home; that when he entered his home on returning from town there was a coat hanging on the rack —a light-colored coat—which he had seen Reeves wear on two occasions, and that he also (this affiant) had worn said coat, but did not know to whom the coat belonged; but he knows that on this particular occasion, and on the day before, appellant did not have the coat, or wear it. In this connection, it may be stated that the defendant's evidence on the trial was to the effect that on the night of the burglary he and the two Boyle boys had rented a team from a livery stable, and early in the night, about dusk, they had gone driving out towards Buckner's Orphans' Home, and perhaps beyond that point, in a double-seated "rig," accompanied by three girls; that they reached their homes that night about 1:30 o'clock. These girls were introduced as witnesses, and testified, making it an impossibility for the burglary to have been begun or commit-

ted by appellant at any time before 2 o'clock. Reeves in his testimony placed the burglary as having been begun about 12 o'clock, or before the street cars ceased running that night, which was about 12 o'clock. There was also, among other things, as Reeves testified, quite a lot of flour taken from the store. Mr. Bibby testified he lost some flour. Some flour was found at Mrs. Maginn's. The officers utterly failed to identify this flour, and the state abandoned the idea of trying to prove it the property of Bibby. This fact is mentioned in connection with another fact to which Reeves testified; that is, in taking the flour out that they spilled a lot of it at, in, and about the vehicle used by them. This flour was not identified, and the officers expressly testified that they abandoned this proof, and therefore they could do nothing with it as evidence. The livery stable people were placed upon the stand by the state to testify in regard to the rig that was hired by appellant, and used that night. Their testimony excludes the idea that there was any flour about the vehicle, or any evidence indicating flour had been in it. These matters are mentioned as bearing upon that ground of the motion for new trial sought upon the testimony contained in the affidavit of young Boyle, who had been tried and acquitted subsequent to the trial and conviction of appellant. It is urgently insisted that this ground of the motion for new trial is well taken, and should have been granted by the trial judge, and that this court should reverse the judgment because of the failure of the trial judge to grant the new trial.

[1] We are of opinion the testimony set forth in the affidavit of Boyle is most material and important, and should be permitted to go before a jury. On the same facts, evidently, upon which appellant was convicted, a jury acquitted his codefendant, Boyle. The state's case depends upon the accomplice who is impeached in every way possible, both as having been arrested several times for theft from the person, and kindred crimes, as well as his reputation for veracity. We understand that the evidence in regard to the pistol is the corroborating fact, if there be any in this case, upon which the state's conviction must stand. This witness will exclude the idea that appellant had the pistol or took the pistol, but that Reeves had it, and the first they knew of the pistol was when he proposed to use it in their game of chance. We therefore are not in position to say that the jury would disregard this character of testimony, because of the fact that Reeves testifies that Boyle was also a particeps criminis. This very issue Boyle proposed to contradict. He would sustain appellant's witnesses to that effect, as adduced upon the trial; nor could we say that this would not probably change the result of the case upon another trial. It might

have this very effect, because a subsequent jury to that which tried appellant evidently did not believe the testimony of Reeves, and acquitted Boyle. In the case of Rucker v. State, 7 Tex. App. 549, this court said: "There can be no doubt at this day as to the rule, or the correctness of the rule in proper cases, as now established in this state, that where two are jointly indicted, and one is tried and convicted, and subsequently the other is tried and acquitted, a new trial will be granted the former to obtain the testimony of the latter, where it appears that the new evidence is legal and competent and material to his defense." Lyles v. State, 41 Tex. 172, 19 Am. Rep. 38; Rich v. State, 1 Tex. App. 206; Huebner v. State, 3 Tex. App. 458; Williams v. State, 4 Tex. App. 5; Brown v. State, 6 Tex. App. 286. This same question has been discussed in quite a number of cases since. See Helm v. State, 20 Tex. App. 41; Barron v. State, 23 Tex. App. 462, 5 S. W. 237; Smith v. State, 28 Tex. App. 309, 12 S. W. 1104; and Gibbs v. State, 30 Tex. App. 581, 18 S. W. 88. We deem it unnecessary to cite more authorities, as these ought to be sufficient to support any ordinary legal proposition, and all coming from this court.

[2, 3] There is another question in the case we may consider which should not have occurred. The officers were permitted to testify in regard to some flour that was found at the residence of Mrs. Maginn. This went before the jury, and at the termination of the trial they had not connected this flour with that taken from the store, and in fact the officers all testified that they were wholly unable to connect it. After all this, the court was requested to charge the jury not to consider this as evidence against the appellant. This was refused by the court and exception taken. Upon another trial, this testimony, if presented in the same manner as it was on this trial, should not be permitted to go to the jury. While it would have been more timely, perhaps, for appellant to have requested its exclusion when the introduction of the evidence closed, yet he had the legal right to request the court to withdraw the evidence from the consideration of the jury even after the testimony had been argued, and the court should have so instructed the jury.

For the errors indicated, the judgment is reversed, and the cause remanded.