## PREAN DEON v. THE STATE.

### No. 1095.   Decided April 14th, 1897.

**1.   Jury Law—Qualification of Jurors—Formed Opinion**

On a trial for murder, where jurors upon their voir dire examination stated, they had formed an opinion as to defendant's guilt from hearsay, but, that they could try him impartially and fairly according to the evidence, and give him the full benefit of any reasonable doubt. Held: The jurors were qualified to sit in the case.

**2.   Same—Special Venire and Talesmen.**

When the special venire was exhausted and an attachment was issued for a juryman who was absent, some ten miles from the courthouse, the court did not err in refusing to delay the trial until the return of the attachment, nor in proceeding to fill up the jury from talesmen.

**3.   Same.**

It is not required that the court should call the regular panel of jurors for the week and exhaust them before resorting to process for talesmen. Following, Weathersby v. State, 29 Tex. Crim. App., 278.

**4.  Same—Swearing Officers to Summon Talesmen**

Where the sheriff and deputies have been once sworn, in accordance with the statute for summoning jurors, it is not necessary that they be sworn again when ordered to summon talesmen to fill out the venire.

Appeal from the District Court of Orange.  Tried below before Hon. Stephen P. West.

Appeal from a conviction for murder in the first degree; penalty, death.

Appellant was jointly indicted with one Hannah Merritt, for the murder of one Margaret Deon, his wife, on the 4th day of April, 1896, by cutting her with a knife and by striking her with an axe, hatchet and some blunt instrument to the grand jurors unknown.  Appellant was alone placed upon trial—with the result above stated.  Appellant and his wife had been married several years; had had many quarrels and separations, and he had whipped her and threatened to kill her.  They had separated a short time before the killing and she was living as a servant at Dr. Houston's, and he, appellant, was living with, or keeping Hannah Merritt.  Appellant confessed his connection with the murder of his wife to the sheriff after he had been arrested and put in jail.  Mr. Bland, the sheriff, testified, that he duly warned and cautioned appellant that any confession he might make could be used against him.  Bland testified:  "Defendant's statement was freely and voluntarily made.  He first said, that Hannah Merritt had done the killing.  He said, he and his wife had a whole lot of trouble.  'I used to beat her, and she had me put in jail.  I paid fines for whipping her.'  He and Hannah plotted to kill her.  That she had made some threats, and they concluded to kill her.  That he, defendant, went last summer and picked out a place to put her.  The very place they killed her and put her, he went to last summer, down in the thick brush.  That he thought that no one could find her; that he would put her there and it would not be a great while until the hogs would eat her up.  They started to kill her Wednesday night before Hannah killed her.  Something happened and they did not kill her.  Friday night he got a buggy from Mr. Johnson.  He went and got Mag and carried her up there in an alley close to Mr. Stark's, and he told her to wait there for him, that he had to come back to town to see if some of the other boys were going to run a horse race.  He saw that Hannah had gone on out to a place where they had agreed to meet, at the section house on the Newton County road.  He went back and found Mag, the deceased, in the buggy.  He got in the buggy and somewhere near the section house Mag spoke of seeing Mr. Stark and some young men, and it came to him that he had better not kill her that night.  He waited awhile and told her, Mag, he expected the boys did not come.  Saturday night he got a buggy again at Mr. Johnson's between 9 and 10 o'clock.  He went to Dr. Houston's and got her, Mag, in the buggy; went out to Gilmer street; turned and went out the street that goes by Mrs. ————.  He went on up the Newton County road.  As he crossed the crossing

of the railroad, near the section-house, he slowed up and Hannah got on the hind part of the buggy, and held on, without Mag knowing that Hannah was about. He went up the prairie, and told her, that he was going to the race track and was going to run a race with H. Suddis and Ed. Powers. That he went to this place that he had picked out. He tied his horse to a myrtle bush. He got out of the buggy and she got out. That Hannah squatted and hid under the buggy; he walked off to the brush and she, Mag, followed him down there and kept by him all the time. Said, she must have suspicioned something. He could not get away from her. He started back and she with him; that he raised his hand to kill her with the axe, but his heart failed him; he could not do it. He went to the buggy and threw his axe in the back end of the buggy, and said to Hannah: 'Don't you do anything to Mag, I cannot kill her: don't you kill her.' He walked to the horse and said, 'Let's go home.' She, Mag, walked on the opposite side of the buggy, and he saw Hannah Merritt start with the axe; that he turned round not to see what happened; that he heard Mag say, "Oh! my God!" He went up to where Mag was, and saw that she was dead, and that he and Hannah chopped her brains out and cut her throat. He asked Hannah, what she did it for? She made no explanation. He told her that he was going to put her, Mag, in the buggy, and bring her to town; and she, Hannah, begged him not to do that. They talked awhile and Hannah took hold of her and drug her off into the bushes. He was so hurt over the matter he did not know what to do. The next thing he knew he was at Mr. Flemming's gate. They turned around there and hung on a stump, and came down the road by Mr. Granville Russell's and Sam Holden's; and he came on to town and put the buggy up."

[No brief for appellant.]

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death; hence this appeal. There are twelve bills of exceptions in the record, all relating to the competency of jurors. These several bills of exceptions, as explained by the court, show no error. It is shown that some seven or eight jurors stated they had formed opinions, all from hearsay. Some of them stated they had a prejudice against wife murderers. Some of them stated originally, in answer to questions by appellant's counsel, that defendant would have to prove that he was innocent before they would acquit him. But these, on further examination, stated that they did not understand the question, and did not intend to answer it that way; that they had an impression, formed from hearsay, that appellant was guilty, but that they could try appellant fairly and impartially, according to the testimony, and give him the full benefit of any reasonable doubt. Challenges to these jurors for cause were overruled, and appellant then challenged

them peremptorily, and they are not shown to have sat in the case. We do not believe the court erred in holding that these jurors were qualified. See, Suit v. State, 30 Tex. Crim. App., 319; Trotter v. State, ante p. 468. Defendant excepted to the action of the court in authorizing the sheriff to summon talesmen before the special venire was exhausted. The bill, as explained by the court, shows that the special venire was exhausted late one evening, and no attachment was requested for certain jurors on the special venire who did not answer to their names when called, being absent. The court asked counsel at the time whether they wanted an attachment for said absent jurors, and counsel then stated that all but one (William West) was excused, and asked for no attachment for him. When the talesmen were brought in the next morning, counsel for the first time asked for an attachment for West. On inquiry by the court it was then ascertained that West lived some ten miles from the court house, and had a very sick child. The attachment was ordered, but the cause was not delayed on that account, but the court proceeded to fill out the jury by selection from the talesmen. In this there was no error. Nor was there any error in the action of the court in refusing to call the jury for the week, before ordering process for the talesmen. The court explains that there was no jury for that week of the court. If there had been, under the decisions of this court it was not necessary to call in the regular panel for the week, before resorting to a special venire. See, Weathersby v. State, 29 Tex. Crim. App., 278; Thompson v. State. 33 Tex. Crim. Rep., 217. Nor was there any error in the failure of the court to have the sheriff and his deputy sworn prior to ordering them to summon the talesmen to fill out the special venire. As shown by the bill of exceptions, these officers had been sworn, in accordance with the statute for summoning jurors, in the early part of the term. There was no error in the action of the court as shown by the twelfth bill of exceptions. The juror was shown to be a competent juror, and moreover, although appellant's challenges were exhausted, the court granted counsel for defendant permission to challenge said juror peremptorily, if he desired to do so. This offer appellant declined to accept, and reserved his bill of exceptions to the action of the court. We have examined the statement of facts carefully; and the evidence shows, beyond any question, by the confessions of the appellant himself, that he and one Hanna Merrit assassinated the wife of the appellant in pursuance of a previously formed conspiracy between them. No motive for this coldblooded murder is shown, except some quarrels and bickerings between appellant and his wife, and the desire on his part to get rid of her, so that he could live with his paramour, Hanna Merritt, undisturbed by any interference on her part. The record suggests nothing to relieve this homicide from murder in the first degree, and the jury were amply justified in visiting upon the defendant the highest penalty known to the law. The judgment is affirmed.

*Affirmed.*