## EARNEST SEWALL v. THE STATE.

### No. 1780. Decided June 12, 1912.

**1.—Murder—Special Venire—Oath of Officers.**

Where, upon trial of murder, it appeared from the record on appeal that the officers who summoned additional jurors, after the jurors selected by the jury commissioners had been exhausted, were not sworn to select such jurors as provided by article 3184, Revised Civil Statutes, the motion to quash the venire should have been sustained.

**2.—Same—Charge of Court—Negligent Homicide.**

Where, upon trial of murder, the State contended that the case was one of murder, and the defendant contended that the shooting was unintentional and a negligent killing, the court should have submitted the question of negligent homicide.

**3.—Same—Change of Venue.**

Where the question is properly raised, the court should hear evidence upon the question of a change of venue.

**4.—Same—Severance—Witnesses Indicted—Accessories.**

Where, upon motion of severance, the other parties being charged as accessories, the court was not in error in refusing to grant a severance, but if the witnesses were indicted to prevent them from testifying the court should see that no injury is done the defendant.

Appeal from the District Court of San Jacinto. Tried below before the Hon. L. B. Hightower.

Appeal from a conviction of murder in first degree; penalty, death. The opinion states the case.

*J. V. Lea, R. H. Holland, J. M. Hansbro, W. M. McMurrey* and *G. I. Turnley,* for appellant.—On question of quashing special venire: Cases cited in opinion.

On question severance: King v. State, 35 Texas Crim. Rep., 472.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question of severance: Williams v. State, 27 Texas Crim. Rep., 466; Ray v. State, 43 Texas Crim. Rep., 234.

On question of court's failure to charge on negligent homicide: Combs v. State, 52 Texas Crim. Rep., 615.

DAVIDSON, PRESIDING JUDGE.—Under an indictment charging murder appellant was given the death penalty.

1. A bill of exceptions recites that when the special venire came to be drawn all of the jurors selected by the jury commissioners had been exhausted except thirty. These were drawn and the sheriff instructed by the court to summon seventy additional jurors, making one hundred in all. The sheriff went to the tax rolls and selected a certain number of names from each justice precinct of the county. This he apportioned among the precincts he says as equitably as he

could. After doing this he wrote the names from each precinct separately and mailed them out to parties with instructions to summon them. Some of these he says were constables and some his deputy sheriffs. The bill shows that none of these officers were sworn except possibly two. This is made evident in the bill both by the testimony of the sheriff and statement of the trial judge. Exception was taken to this manner of selecting and serving the jurors, and motion was made to quash. This was overruled. The Revised Civil Statutes, article 3184, requires that "Whenever it may be necessary to summon jurors who have not been selected by jury commissioners under the provisions of this title, the court shall administer to the sheriff and each of his deputies the following oath: 'You do solemnly swear that you will, to the best of your skill and ability, and without bias or favor toward any party, summon such jurors as may be ordered by the court; that you will select none but impartial, sensible and sober men, having the qualifications of jurors under the law; that you will not, directly or indirectly, converse or communicate with any juryman touching any case pending for trial; and that you will not by any means attempt to influence, advise or control any juryman in his opinion in any case which may be tried by him, so help you God.'" This oath was not administered to the officers who summoned the jurors. This has been held requisite in all the cases where the question has arisen. Wyers v. State, 22 Texas Crim. App., 258; Hicks v. State, 5 Texas Crim. App., 488; Habel v. State, 28 Texas Crim. App., 588; Shaw v. State, 32 Texas Crim. Rep., 155; Adams v. State, 35 Texas Crim. Rep., 285; Deon v. State, 37 Texas Crim. Rep., 506; Rev. Civil Stat., article 3184.

2. Another question suggested for revision is the failure of the court to charge the law applicable to negligent homicide. The question is fully and properly submitted for decision. There are two theories in the case: The State's contention is that the homicide was murder; appellant's that it was an accidental killing negligently done. It is disclosed by all the evidence that several parties, among them deceased and appellant, left the town of Shephard for Drews Landing on the Trinity river; all parties were horseback. Deceased was a white man, the others negroes. Reaching the forks of the road about a mile or such matter from the town of Shephard the parties stopped; two of them engaged in a crap game; all of them drank whisky. The deceased, Davidson, reloaded his pistol, which he had fired off before reaching that point. Appellant secured his pistol from one of the other negroes who had it and loaded it. The State's witness testified while standing there appellant shot the deceased and killed him. Parties there examined his body and failed to find where he had been shot. It was there said that he had broken his neck by falling from his horse, and the State's contention is, it was an agreement among them that they would so state in regard to the manner of death. It is further the theory of the State from this witness' testimony, that

they moved the body some distance from the place of the tragedy, a hundred yards or more, and laid it by the side of the road. Without going into details this is practically the State's case.

The defendant's side of the case is that after he and deceased loaded their pistols, all present mounted their horses and started on their journey, the deceased, Davidson, was behind appellant and one of the negroes who was riding with him. Davidson began shooting off his pistol; that after deceased began shooting his pistol, appellant jerked his pistol out and began shooting, and while shooting deceased's horse became unruly and dashed by where appellant and his companion were, and in shooting, one of the shots from appellant's pistol struck Davidson, the deceased, and he fell from his horse, and was found dead when the parties reached him. They were riding along the road at the time of the shooting. It will be seen, therefore, that two theories are sharply presented, one of an intentional killing at the place where the parties stopped, and the other, that the parties were riding along the road firing their pistols and deceased was accidentally shot.

The State also put in evidence the written confession of the defendant which is almost identically, if not literally, the same testimony that defendant relied upon in the trial of the case to show an accidental but negligent shooting of deceased. It is unnecessary to repeat that confession. It is the same testimony we might say literally as that introduced by the defendant to show an unintentional and negligent killing. Under this testimony the issue of negligent homicide was clearly raised and was a part of the law of the case. The deceased was doing an illegal act, which was but a misdemeanor, that is, shooting his pistol off along the road. It occurs to us that under the statute and all the cases construing the statute, the law of negligent homicide was directly applicable to the facts of this case, and the charge on this phase of the law should have been given, and the court was in error in not giving it. See Branch's Criminal Law, section 501, for collation of authorities.

3. Another question is suggested, to wit, the action of the court in not changing the venue. Upon another trial if this question is properly raised the court should hear evidence upon it to the end that the accused may have a trial in a county where it can be had without prejudice to his rights such as is contemplated under the law authorizing change of venue.

4. Another question is also mentioned, to wit, the refusal of the court to grant appellant's severance. The other parties being charged as accessories, under the authorities the court was not in error in refusing to grant the severance, but it is suggested that if the court should ascertain the fact to be that the witnesses were indicted to prevent them from testifying, the court should see that no injury is done the appellant for this reason and use such authority as is confided to the trial court to see that no undue advantage of this sort may be taken. If this record shows all the facts which tend to con-

stitute the other parties accessories, then it is insufficient for that purpose.

For the reasons indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*