Stephen D. **ZERSCHAUSKY**

v.

Dr. George **BETO.**

**Civ. A. No. 67–50–SA.**

United States District Court
W. D. Texas,
San Antonio Division.

Oct. 16, 1967.

Fred A. Semaan, San Antonio, Tex., Luther Jones, Corpus Christi, Tex., for plaintiff.

James E. Barlow, Criminal Dist. Atty., Preston H. Dial, Jr., First Asst. Dist. Atty., San Antonio, Tex., Crawford Martin, Atty. Gen., of Texas, Douglas H. Chilton, Asst. Atty. Gen., Austin, Tex., for defendant.

### MEMORANDUM OPINION

SPEARS, Chief Judge.

Petitioner, Stephen D. Zerschausky, a person in state custody under a 30 year sentence imposed on April 9, 1963 as a result of a felony conviction of murder with malice, having exhausted his remedies in State Court, filed in this Court his petition for writ of habeas corpus, alleging, among other things, that he was denied the benefit of the testimony of three eye witnesses who were under indictment as accessories [1] and thereby disqualified as witnesses in his behalf under Articles 81 and 82 of the Vernon's Ann. Texas Penal Code, and Art. 711 of the Texas Code of Criminal Procedure, in effect at the time of his trial.[2] He

---

1. The three accessory indictments were dismissed on May 27, 1963, about seven weeks after sentence was imposed.

2. Article 81. *When accessory may be tried.* An accessory may in like manner be tried and punished before the principal when the latter has escaped; but if the principal is arrested he shall be first

tried, and if acquitted, the accessory shall be discharged.

Article 82. *Parties to offense as witnesses.* Persons charged as principals, accomplices or accessories, whether in the same or by different indictments can not be introduced as witnesses for one another, but they may claim a severance,

contends that those statutes are in direct conflict with the Sixth Amendment to the Constitution of the United States; that he was denied due process of law under the Fourteenth Amendment; and that evidence favorable to him was suppressed by the prosecution in derogation of his rights under the Fifth, Sixth and Fourteenth Amendments.

No appeal of his conviction was taken by petitioner, but, instead, some three years later [3] he filed an application for writ of habeas corpus, which was heard and the record thereof certified to the Court of Criminal Appeals of Texas by the judge who presided at the original trial.[4] That Court on June 7, 1967, by a majority of three to two, overruled petitioner's contentions that his constitutional rights had been violated, Ex Parte Zerschausky, Tex.Cr.App., 417 S.W.2d 279, holding that the record fails to reflect "any ruling of the trial court denying petitioner the right to call the witnesses under indictment as accessories and have them testify for him", and that in the absence of such a ruling the petitioner was not denied due process. I agree with the majority.

After the jury had been selected and before any testimony had been adduced, defendant's counsel had an *ex parte* conference with the trial judge, where, according to his testimony given at the habeas corpus hearing in State Court, the following transpired:

" * * * I discussed the case of Stein v. State, infra—and, offhand I don't remember the citation but I can furnish it into the record—which holds that an accessory can testify if the

prosecution will waive their objection. And I told Judge Brown that I wasn't sure whether or not he was familiar with the ruling in the case, but that I wanted him to be aware of it and that I intended to ask the District Attorney to waive his objection and let the accessories testify. If he agreed, I apprised Judge Brown of the fact that I intended to call these witnesses. If the District Attorney didn't waive his objection, then I couldn't call them. Judge Brown agreed with me, that that was more or less the law and to wait and see what the District Attorney's attitude was during the trial."

Said counsel further testified that later during the trial when the District Attorney, after having been requested to do so, refused to waive his objection and let the accessories testify, the witnesses were out in the hall ready to take the stand the minute they were called.

█ The record reflects that the three persons charged as accessories were represented by counsel other than that representing petitioner. Although it is true that the District Attorney was called as a witness before the jury and asked to waive any objection to the accessories testifying, neither of the proposed witnesses was called to testify, nor was their testimony offered out of the presence of the jury to show materiality or to preserve error. The trial judge was never called upon to rule on their competency as witnesses, and he was not asked to exercise his inherent power to permit them to testify, over any possible objection the State may have had, in order to protect the rights of the petitioner.[5] As a con-

---

and if one or more be acquitted they may testify in behalf of the others.

Article 711. *Principals, accomplices or accessories.'* Persons charged as principals, accomplices or accessories, whether in the same or different indictments, cannot be introduced as witnesses for one another, but they may claim a severance; and, if any one or more be acquitted, or the prosecution against them be dismissed, they may testify in behalf of the others.

3. This was after the statute of limitations had run on any accessory charges against the three proposed witnesses.

4. This procedure is required by Article 11.07 Vernon's Annotated Texas Code of Criminal Procedure.

5. In Ex Parte Zerschausky, supra, 417 S. W.2d at 281, the majority said: "This Court has recognized the inherent power of the trial court to protect the rights of the defendant guaranteed by Art. 1, Sec.

sequence, it cannot be assumed that these three persons, or any one of them, would have in fact testified.[6]

In its opinion on rehearing (July 19, 1967), the Court of Criminal Appeals said, and I agree, that: "The decision of the Supreme Court in Washington v. State, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed. 2d 1019 * * *, is not inconsistent with the holding of the majority in that the trial judge did nothing to deny petitioner the right 'to put his witnesses on the stand,' or the 'right to compel their attendance in Court.' "[7] The *ex parte*

10, of the Constitution of Texas, Vernon's Ann.St. and has held that the Legislature is without authority to deprive an accused of his right to have compulsory process for obtaining witnesses in his favor. Bludworth v. State, 168 Tex.Cr.R. 549, 330 S.W.2d 436, and cases cited. * * * In Sewall v. State, 67 Tex.Cr.R. 105, 148 S.W. 569, decided in 1912, the refusal of the trial court to grant a severance, the other parties being charged as accessories, was held not to be error but it was suggested: 'if the Court should ascertain the fact to be that the witnesses were indicted to prevent them from testifying, the court should see that no injury is done the appellant for this reason, and use such authority as is confided to the trial court to see that no undue advantage of this sort may be taken.' " If the trial court had been properly informed in an adversary manner, rather than *ex parte*, not only with respect to the holding of the Court of Criminal Appeals in Stein v. State, 172 Tex.Cr.R. 248, 355 S.W.2d 723, but also concerning its decisions in Bludworth v. State, 330 S.W.2d 436, and Sewall v. State, 148 S.W. 569, there is more reason than not to believe that he would have allowed the witnesses to testify, at least out of the presence of the jury, so that the complete record would be before the Court of Criminal Appeals.

6. It is more reasonable to assume that the three individuals would not have testified. After the statute of limitations had run against the offenses with which they were charged, their testimony offered in support of the petition for writ of habeas corpus contained statements to the effect that they agreed to lie to the police with respect to the occurrence of the murder, that they cleaned up any evidence of the killing, and that one of them assisted petitioner in removing the body. It is inconceivable that their experienced attorney would have permitted them to take the stand in petitioner's case and testify to matters of such a highly incriminating nature. Obviously, the District Attorney had probable cause to request the indictments of the alleged accessories, even though it later developed that the indictments were dismissed be-

cause of insufficient evidence. It cannot be said, therefore, that the three alleged accessories were indicted for the purpose of making them ineligible as witnesses for petitioner. Actually, their testimony would have conflicted in several respects with petitioner's own theory of self-defense, particularly with respect to how and with which hand the deceased allegedly reached for a gun, and how he was ultimately shot in the back of the head. And, as indicated, it is clear that their testimony alone would have been sufficient to sustain the conviction of each of them as an accessory.

7. But if Washington (388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019) were to be considered as otherwise controlling, I am not convinced that it should be applied retroactively in this case. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed. 2d 601 (a habeas corpus proceeding) cited by the minority of the Court of Criminal Appeals, 417 S.W.2d at 285, held that the rule that evidence seized in violation of the Fourth Amendment is not admissible, will not be applied retroactively. While the Court there stated that the Constitution neither prohibits nor requires retrospective effect, it pointed out that it was sometimes necessary to punish a wrong-doing state official by giving retroactive effect to a law, or to persuade a particular State to follow a federal rule by the same method, but it indicated a reluctance to interfere with State procedures until the States have had an adequate time to be made aware of the federal pronouncement, and to take their own steps to fall in line with the federal rule. However, the Texas statutes here complained of were repealed directly or by implication by the 59th (1965) and 60th (1967) Legislatures of the State of Texas. Reversing petitioner's conviction will neither punish a wrong-doing official nor serve to correct any improper state rule. It is pertinent to note that Washington involved a direct appeal, which the Supreme Court apparently treats quite differently from a habeas corpus proceeding, and all points of error had been perfected, preserved and urged at all trial and appellate levels.

conference between the trial judge and defense counsel, even when considered along with the refusal of the District Attorney to waive his objection, hardly constituted a proper request to the Court for a definitive ruling on the questions involved. In the first place, the District Attorney was not a party to the conference, but, in any event, his refusal to waive did not foreclose the Court, in the exercise of its right, power and duty, from making its own rulings in the interest of justice. Certainly, the Court was under no duty to rule in the absence of a request made pursuant to well-defined procedures governing the trial of criminal cases in Texas.[8] Since no effort was made by able counsel to follow these procedures, the conclusion is inevitable that they were either deliberately by-passed as a part of the trial strategy,[9] or that the present attempt to raise the constitutional issues has come as an afterthought.[10]

I am not impressed by the contention, made for the first time in a supplemental brief filed just prior to oral argument before this Court, that a statement contained in a brief filed by the District Attorney in the Court of Criminal Appeals constituted a "concession" that the trial judge had made a ruling on the competen-

8. See Art. 759a, Sections 1 and 2 of Vernon's Annotated Texas Code of Criminal Procedure. Section 2 reads as follows: "(a) Where the Statement of Facts in question and answer form reflects the admission or rejection of testimony objected to or offered by the defendant, the defendant's objection thereto, the evidence rejected, the court's ruling thereon, or * * * any ruling or opinion or other action of the court, with the defendant's objection thereto, he may except thereto at the time the said ruling is made or announced or such action taken, and such Statement of Facts shall constitute a bill of exception to such ruling, opinion or other action of the court, and no formal bill of exception thereto shall be necessary. The defendant may, however, prepare and have filed a formal Bill of Exception if he so desires. Where the defendant offers testimony which is rejected by the court, the judge, if requested by defense counsel, shall immediately retire the jury and hear such testimony to allow defendant to perfect his Bill of Exception. Such rejected testimony may be carried in the Statement of Facts and may be considered a Bill of Exception. (b) Formal exceptions to rulings on evidence, opinions or other action of the court, as provided in Subdivision (a) above, are unnecessary; but for all purposes for which an exception has heretofore been necessary, it is sufficient that a party, at the time of the ruling, opinion, or action of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and if a party has no opportunity to object to the ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him. (c) In like manner as hereinbefore provided in this Section, the defendant may reserve in the Statement of Facts, or by informal Bill of Exception, objection to argument of State's counsel, motion to withdraw testimony, or ruling of the trial court made during the trial. See also Alejandro v. State, 161 Tex.Cr.R. 411, 277 S.W.2d 717.

9. See Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); and Henry v. State of Mississippi, 379 U.S. 443, 450, 85 S.Ct. 564, 13 L.Ed.2d 408 (1964).

10. It is no excuse to say that since the Washington case had not been decided by the Supreme Court at the time petitioner was tried, he could not have been waiving a right that he did not know he had when he failed to call the co-indictees as witnesses. There was ample authority for asking the trial judge to permit the co-indictees to testify, notwithstanding any objection of the State, by virtue of the inherent power of the trial court to preserve the rights of the defendant. See footnote 5, supra. However, as has been noted, this was not done. Besides, the habeas corpus petition presented to the Court of Criminal Appeals, which, among other things, challenged the constitutionality of the statutes involved, was filed in that Court on January 9, 1967, some five months before the Washington opinion was handed down on June 12, 1967. However, when this Court learned of the decision in Washington, all proceedings were held in abeyance, pending a determination of the motion for rehearing filed in the Court of Criminal Appeals, in order to promote and maintain "the delicate balance between the State and Federal Courts".

cy of the co-indictees as witnesses, or on the admissibility of their evidence.[11] The record reflects absolutely no ruling by the Court on any of those issues, and no showing has been made that the statement in the brief was intended to add to the "full, true and correct statement of facts", which the trial judge had "examined and found correct", or to constitute a voluntary and intentional confession of error. The brief and argument submitted to this Court by the State reflect the contrary, and the petition for writ of habeas corpus itself was not premised upon any such purported concession.

■ Nor am I impressed by the argument that the District Attorney's refusal to waive his objection to the co-indictees' testifying amounted to a suppression of evidence. Obviously, the information was exclusively in the hands of the defense, and, as has been noted, no real effort was made to place it before the Court. Under the circumstances of this case, there was no suppression of evidence in the constitutional sense. The situation, however, might well have been different if the Court upon proper request had refused to hear the witnesses, or if the witnesses had in fact testified as they now say they would have, out of the presence of the jury, and the trial court had then refused to allow the petitioner to call them as witnesses in the main case.

Being of the firm opinion that the granting of the petition for writ of habeas corpus in this case would not promote the administration of justice, and would constitute an unwarranted use of federal power, the petition is denied.

This memorandum opinion contains all findings of fact and conclusions of law to be entered, and shall be filed as the final judgment and order of this Court herein.

---

11. The "concession" referred to was as follows: "During the course of the main trial, the defense attempted to call Bob Profili, Peggy Profili and Bobby Samuels as defense witnesses over the State's objections that they were incompetent as co-indictees. The Court sustained the State's position and held that their testimony was inadmissible as a matter of law." Significantly, apparently none of the judges on the Court of Criminal Appeals considered the foregoing to be a concession, and only one of the attorneys for petitioner, by his own admission, caught it when he read the record about a week before the oral arguments were heard in this Court on September 29, 1967. The same attorney agreed "that the main record that was made, to put it charitably to our side, is ambiguous as to Judge Brown's refusing, and if that is all we had, Judge, I would say that perhaps the Court of Criminal Appeals was correct in holding that there was no trial court ruling or refusing to put the witnesses on." He then argued that the "concession" showed that the District Attorney "understood what was happening."