## W. J. CHUMLEY v. THE STATE.

### No. 100.   Decided June 3.

**1. Defendant's Right to Sever on Trial — Practice as to.** —Under
article 669a, Code of Criminal Procedure (Act of March 21. 1887), it is provided,
that where two or more defendants are prosecuted for an offense growing out of
the same transaction, by separate indictments, they may sever on the trial by
either defendant making affidavit, that the evidence of one or more of the other
indicted parties is material to his defense; and in the event that two or more de-
fendants make such affidavit, and can not agree as to their order of trial, then
the presiding judge shall direct the order in which they shall be tried.   See case
in which it was held, that the judge rightly exercised his authority to direct the
order of trial between two defendants, under the latter provision of this statute.

**2. New Trial to Obtain Testimony of Acquitted Codefendant.**
Where, after his conviction, defendant filed his motion for a new trial in order
to obtain the testimony of a codefendant, who had subsequently to defendant's
conviction been tried and acquitted, and the motion was supported by the affi-
davits of the acquitted defendant and another party, and the facts set out in said
affidavits are competent as evidence, admissible, material to the issue, of great
importance to the defendant, and if credited by the jury would, in all probabil-
ity, change the result on another trial:  *Held*, that the new trial should have
been granted.

APPEAL from the District Court of Wise.   Tried below before Hon. J.
W. PATTERSON.

Appellant was indicted for robbery of one John Bird, and having been
convicted at his trial, his punishment was assessed at five years confine-
ment in the penitentiary.

The circumstances of the robbery are substantially stated by John Bird,
the alleged injured party, and were, that he and his brother Jeff went, in
a two-horse wagon, with a bale of cotton, to the village of Alvord, on
the afternoon of the 28th of October, 1892, and after selling said bale of
cotton, they remained in the village until after dark, buying a jug of
whisky and some groceries, and that while in the town he saw the two
men who afterwards robbed him, taking a drink in a saloon.   And some-

time after dark he and his brother got into the wagon and started home, he driving and his brother lying down in the rear part of the wagon. That about a quarter of a mile from the town of Alvord two men overtook them near the graveyard. That they tried to get them to stop and take a drink of whisky with them, which he declined to do. That the parties repeated this a second time on the road; that about three miles from Alvord they passed him and disappeared. At some little distance from this they again appeared, on foot, in front of him, and one of them presented a pistol at him and ordered him to stop and throw up his hands, which he did. The other confederate got into the wagon and took from him his pocket-book, containing a $20 bill, three $5 bills, four silver dollars, and a dollar or two in small change. While this was going on, his brother Jeff, who had been asleep in the wagon, roused up; seeing which, the man with the pistol ordered his comrade to go through him also. He said, " the man who robbed me, then jumped down by the side of the wagon and started to get into the wagon from behind, when my team started forward, and I let them go. The man who had the pistol shot my brother just as the team started to run." He carried his brother on to Dr. Pain's, who examined and subsequently treated him for his wound. He stated that the moon was shining that night, and that he recognized defendant after he was arrested as the man who had robbed him.

Jeff Bird testified substantially as did his brother John. He stated, that he was shot on the right side of the head, the ball coming out by the side of the ear. That the next time he saw defendant he was in the Wise County jail, when he recognized him as one of the parties who shot off the pistol when near the graveyard, and the one who robbed his brother.

Rucker, sheriff of Wise County, testified, in substance: That on the next morning he went down to the place where the robbery had occurred. Saw in the road a wagon track, and the tracks of two men on the side of the road; trailed the foot tracks about fifty yards around the corner of the fence, and found where two horses had been hitched to the fence; that the left fore foot of one of these horses had a nick out of the hoof on the left side near the front, making a plain mark, from which it could be distinguished from other horse tracks. Both horses were unshod. He followed the horses' tracks, both running, on back towards Alvord. He carefully measured the tracks of the men, both lengthwise and crosswise; also the horse tracks the same way. That he went to the house of defendant's father, where the latter lived, and caused defendant to make tracks in the sand, which he also measured, and the tracks corresponded exactly with the track made at the wagon, where the robbery occurred. Defendant and his father also pointed out a brown mare which they said defendant was riding on the night of the robbery. He says the animal was unshod, and the measurement of her tracks corresponded exactly with the tracks of one of the horses hitched near the fence near where

the robbery occurred.   I also found a broken piece out of the left fore foot, which made the track showing the missing piece.  It was on the left side of the hoof, near the front, just as the track where the horses were hitched indicated.

Dr. Pain testified to the nature and character of the wound on Jeff Bird, and that the next day he asked John Bird if he knew the parties who had robbed him, and shot his brother, and he said that he did not. He also testified, that the next morning he went to the place where the robbery had occurred, and his testimony corroborates that of the other witnesses as to the tracks found upon the ground.   He further testified, that he thought Jeff Bird was shot with a 38-caliber ball.   The evidence shows that one Henry Grantham was seen with defendant, drinking and talking, at Alvord on the evening of the robbery.

Walter Reynolds testified, that the evening before the robbery he sold Henry Grantham 35 cents worth of cartridges, being sixteen 38-caliber, and he saw Henry Grantham and defendant talking together behind Henry Longeway's store.

The testimony for defendant was an alibi, and that he did not wear the boot that made the track that the sheriff measured, because they hurt his feet, and that he had borrowed the shoes of one Ragland.   That he was not familiar with Grantham.   That he left the town a short time after the Bird boys did, by himself; went direct home, and never saw Henry Grantham after he left town.   He reached home about 9 o'clock.

After defendant had been tried and convicted, Henry Grantham, who was charged by separate indictment with the same offense, was tried and acquitted.   Defendant's motion for new trial was based, in part, on the fact that he desired the testimony of said Grantham on another trial. This motion was sustained by the affidavit of A. J. Spencer and Henry Grantham, which established a complete alibi for said Grantham.

*W. S. Jamison* and *Walton, Hill & Walton,* for appellant.—This right of severance is a valuable right; it is accorded by statute, and may not be recklessly or designedly or corruptly defeated.   Forcey's case, 29 Texas Cr. App., 408; Tieman's case, 28 Texas Cr. App., 144; Reed's case, 11 Texas Cr. App., 515; Conn's case, 11 Texas Cr. App., 391, 400.

The appellant's case was called for trial.   It was first in order.   He made the necessary affidavit for severance, and to put Grantham on trial first to clear away the indictment against him, so as to qualify him to speak as a witness for appellant.   Thereupon Grantham makes an affidavit to put defendant on trial first, whose case had already been called for trial, and the court orders the trial to proceed, as if no affidavit had been made.   True, there is a discretion vested in the court, but it must be reasonably exercised.   The developments following demonstrate, that

Grantham was a material witness for appellant, to prove that John and Jeff Bird were wholly in error in placing him present at the robbery, and if mistaken as to him, they could have been mistaken as to appellant. At least he had the right of a human being to have that phase of the case represented.

Outside of the testimony of the Birds, appellant's inculpation was very slight, and part of that on a manifestly false basis, viz., the correspondence of tracks with the boots he wore when arrested, when the truth was, as abundantly shown, that he did not wear said boots on the night when the robbery was committed, but on the contrary, wore the shoes of a friend.

If the statute, article 669a (Session Acts 1887, page 33), has any vitality in it, if it means anything, if intended to elicit truth, if passed to aid in a pure and fair administration of the law, then all its intentions, meanings, and purposes were crushed out of it in this case, and it was left a delusion and snare, by which men are entrapped to their ruin.

*R. L. Henry*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant and Henry Grantham were separately indicted for the same alleged robbery. When the defendant's cause was called for trial, it having precedence on the docket, he filed his affidavit, under the terms of the statute, asking that Grantham be first tried. To this Grantham interposed objection, and filed his affidavit asking that defendant be first placed upon trial. They having failed to agree as to the order of trial, the presiding judge ordered the trial of defendant. This was in strict compliance with the statute. Gen. Laws 1887, p. 33.

2. During the same term of the court, and after the defendant's conviction, Grantham was tried and acquitted. Defendant sought a new trial for the testimony of Grantham. In support of this ground of his motion he filed the affidavit of Grantham and A. J. Spencer. The facts set forth in the affidavits are competent evidence; they are admissible, material to the issue, and of the greatest importance to the defendant, and if credited by the jury, would in all probability change the result on another trial.

The theory of the State was, that the two men who perpetrated the robbery were defendant and Grantham. John Bird, one of the injured parties, identified them as the robbers. It was at night. Grantham swears that he was not present at the scene of the crime, and was not with defendant at that time. This is corroborated strongly by Spencer, whose testimony is shown to have been ascertained subsequent to defendant's conviction. The facts embodied in the affidavits were not controverted by the State. John Bird was the only witness who identified the parties, and if he was mistaken in this matter as to Grantham, it is probable that

he was also mistaken as to the identity of defendant. The jury found that he was mistaken as to Grantham's presence and participancy in the robbery. While Grantham is not informed as to whether defendant engaged in the robbery or not, yet he does swear most positively, that he was not with defendant and did not engage in the robbery. As presented by this record, the motion for a new trial should have been granted. Helm v. The State, 20 Texas Cr. App., 41; Rucker v. The State, 7 Texas Cr. App., 549; Willson's Crim. Stats., sec. 2544.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.