**James E. WHITMORE, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 52325.**

Court of Criminal Appeals of Texas.

Oct. 13, 1976.

On Rehearing April 6, 1977.

State's Motion for Rehearing
July 12, 1978.

State's Motion for Rehearing En Banc
Denied Oct. 4, 1978.

Brantley Pringle and Robert Schmidt, III, Fort Worth, for appellant.

Tim C. Curry, Dist. Atty. and Marvin Collins, Asst. Dist. Atty., Fort Worth, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for capital murder. Punishment was assessed at death. The indictment alleged in substance that Whitmore caused the death of Judy Carol Rummel by employing Harrell Totty for remuneration to kill her.

The evidence presented shows that at approximately 5:00 p.m., on September 26, 1974, appellant, James Whitmore, had gone to the Dos Gringos Bar in Fort Worth. Joyce Walton, a waitress who served appellant, testified that he appeared to be upset. She further stated that he told her that his girlfriend had tried to run over him with a car and attempted to stab him on two previous occasions and that in response to her comment, "You mean to tell me you're going to put a contract out on her?" he replied, "Well, I can't let her kill me." Whitmore then related that he had talked with a security guard as to exactly what could be done about the situation without elaborating on the details of their plans. He also stated to her that he would not be caught because no money would be transferred between them. As he left he said, "Well, you'll probably read about this in the paper."

Allen Bailey, his neighbor, testified that on the evening in question he had gone skeet shooting. He returned to his apartment around 9:30 p.m. and began cleaning his shotgun. Shortly thereafter, Whitmore came over and told him ". . . that if I heard two shots about two o'clock in the morning, not to worry about it, just open my door and he wanted to use the phone to call the police" because he did not have a telephone in his apartment. Bailey then testified that Whitmore had told him about his girlfriend's two previous attempts to kill him and about the details of his plan with the security guard, Harrell Totty, to kill her. The plan called for him to invite his girlfriend over to make amends for their past disagreements. Totty would be making his rounds of the apartment complex and would be in appellant's bathroom and he would yell, "Totty, Totty, Totty", and Totty would come around the corner and shoot her twice. Then they were going to take a knife from the sink and use a sock to put it in her hand. Whitmore would make sure she was dead and then call for a doctor who lived in the complex to come over. Bailey stated that he did not believe Whitmore.

Tory Schroeder came into the apartment and Whitmore told him of the attempts made on his life by his girlfriend to which Schroeder kiddingly replied, "I would have her shot." Some ten or fifteen minutes later Schroeder and Whitmore left to buy some beer. On the way to the Quik Sak grocery he told Schroeder that he was going to have his girlfriend, Judy Rummel, shot and that he was going to pay the security guard to do it and related the same plan to him as testified to by Bailey.

Judy Rummel, the deceased, was employed as a waitress at Pinto's, a restaurant and bar. Whitmore knew that the place usually remained open until 2:00 a.m. Judy closed Pinto's early on the evening in question because there were no customers. Susan Cowell, a friend and former roommate of the deceased, testified that she was with her at Pinto's at approximately 9:30 p.m. and that Judy was very happy that evening because it was her first day back at work

after having been in the hospital for pneumonia and she was going to see Whitmore that night.

Anita McCasland, the deceased's roommate, testified that she was with her at Pinto's from 8:00 p.m. until it closed at 11:30 p.m. and that her roommate had been in a good mood all evening. The deceased gave her a ride to their trailer house and after dropping her off said that she had received a call from Whitmore and was going to his apartment.

Schroeder, Totty and Whitmore were still in Bailey's apartment when the deceased arrived. Schroeder then returned to Dr. Horn's apartment where his mother was visiting and as he looked back he observed appellant, Totty and the deceased going into the apartment together. He then told Dr. Horn and his mother of Whitmore's threats and began watching the apartment through the window of Dr. Horn's apartment. Ten minutes later he heard two shots and then saw Whitmore go next door to Bailey's apartment. Bailey, who had left his apartment for a few minutes to go to the store, also heard the two shots as he was unlocking his door after which he heard a woman scream, "Oh, God." Shortly thereafter, Whitmore came into his apartment and said, "That was a cold blooded son-of-a-bitch, wasn't it, Allen?" Whitmore called the police and then went to Dr. Horn's apartment and told him that there was a woman in his apartment with two bullet holes in her. Dr. Horn told him to call an ambulance and police and to "get the hell" out of his apartment. Prior to going to Dr. Horn's, Whitmore had yelled to Bailey as he was leaving, "Al, come over and look at this s----." Bailey stepped outside his apartment and looked into the apartment. The deceased was lying on her side with her left arm draped over her forehead and her back toward the fireplace.

Officer C. P. Chessar of the Fort Worth Police Department testified that upon his arrival at the apartment he had the following conversation with Totty:

"Q. Did Totty describe to you the circumstances under which he had gone to the apartment that evening?

"A. Yes, sir, he did.

"Q. What did he say had happened?

"A. He stated he had been making his rounds, and knew that Whitmore had been having trouble, and he had gone to the apartment, One Seventy-One, to use the restroom. He stated that while he was inside the restroom he heard Whitmore screaming for help, and he went to the entranceway. He said, 'I drew my pistol and fired twice, I think.'

"Q. All right. Did he say who he shot at?

"A. He stated that he had shot at a white female, coming at Whitmore with a knife extended."

Detective E. W. Cole of the homicide division testified that upon his arrival:

"He [Totty] told me he was the security guard there at the apartments that he— They had had trouble with Mrs. Rummel before at the apartments, that they had had complaints of her trying to run over Mr. Whitmore, that he was making his rounds, and that he had stopped into Mr. Whitmore's apartment to use the bathroom, or restroom, and while there, in the restroom, he heard a call from Whitmore, and when he came around he saw Mrs. Rummel coming at James Whitmore with a knife, and that he fired his weapon."

The Tarrant County medical examiner testified that the deceased had died as a result of blood loss into the thoracic chest due to two gunshot entry wounds. Several other witnesses who had known Whitmore testified that he drank heavily and was an alcoholic. There was also testimony that there had been problems in the past between him and the deceased.

Whitmore testified that he had talked to Judy Rummel at 4:30 p.m. on September 26, 1974, approximately seven hours before her death and he knew that she worked until 2:00 a.m. each morning. He further testified that at 6:00 p.m. on September 26,

1974, he had asked the security guard, Harrell Totty, to come check on him around 2:00 or 2:15 a.m. because he was going to have a date and the deceased knew of this fact. He related that when Totty was making his rounds at approximately 11:30 p.m. and asked to use his bathroom, just before the killing, he told Totty there would be no need to come by at 2:00 a.m. because he was going to spend the night at his mother's place.

In his first ground of error, he contends that the trial court erred in not granting a new trial based on newly discovered evidence, the newly discovered evidence being that Harrell Totty, also indicted for this offense, had been acquitted.

The jury returned its verdict on May 30, 1975, and the motion for new trial was not filed until June 30, 1975. Assuming that we could consider the late motion for new trial, a subsequent acquittal of a co-principal of the crime does not by itself entitle a convicted co-defendant to a new trial. Another jury often has different evidence involving a single transaction. Different juries could reach opposite results on the same evidence. *Rozell v. State,* 502 S.W.2d 16 (Tex.Cr.App.1973).

Next, he contends that the trial court erred in filing "Conclusions of Law" overruling the motion for new trial over his objection. He urges that the action of the trial court is in violation of Article 40.07, V.A.C.C.P., which provides:

"In granting or refusing a new trial, the judge shall not sum up, discuss or comment upon the evidence in the case, but shall simply grant or refuse the motion without prejudice to either party."

The court, in its conclusion, found that the motion was untimely filed. In order for such action to constitute reversible error, there must be a showing of injury to appellant. *Mims v. State,* 378 S.W.2d 318 (Tex. Cr.App.1964). No harm is shown. Ground of error number two is overruled.

In his third ground of error, he contends that the trial court erred in sustaining the State's challenge for cause of venireman

Ray E. Rugg. He argues that Rugg was a qualified juror under the constitutional standards of "*Witherspoon*" and that the Legislature is without authority to impose stricter standards as to a venireman's qualification on the death penalty.

He is apparently contending that V.T. C.A., Penal Code, Section 12.31, is in conflict with *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and that the prospective juror Rugg was excused in violation of *Witherspoon.*

In *Hovila v. State,* 532 S.W.2d 293 (Tex. Cr.App.1975), we held that the holding of *Witherspoon* was still alive and well in light of the new statutory scheme providing for the imposition of the death penalty, the adoption of which followed in the wake of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). *Moore v. State,* 542 S.W.2d 664 (1976).

The statutory scheme for capital murder [V.T.C.A., Penal Code, Section 19.03 (formerly Article 1257, V.A.P.C., as amended in 1973), and Article 37.071, V.A.C.C.P.], including the possible infliction of the death penalty, has been upheld by this Court in *Jurek v. State,* 522 S.W.2d 934 (Tex.Cr.App. 1975), and by the United States Supreme Court in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976).

Prospective juror Rugg stated that under certain circumstances he would falsify his vote in answering the questions or issues submitted to him as provided by Article 37.071, V.A.C.C.P., in order to avoid imposition of the death penalty. Although Rugg stated that in a proper case he might be able to impose the death penalty, he consistently stated that his opposition to the death penalty would affect his deliberation on the fact issues submitted to him as required by Article 37.071, supra. While it is conceded by the State that Rugg was qualified under the *Witherspoon* doctrine, his answers were such as to disqualify him under V.T.C.A., Penal Code, Section 12.31(b), which provides:

"Prospective jurors, shall be informed that a sentence of life imprisonment or death is mandatory on conviction of a capital felony. A prospective juror shall be disqualified from serving as a juror unless he states under oath that the mandatory penalty of death or imprisonment for life will not affect his deliberations on any issue of fact." [1]

It is of no consequence that prospective juror Rugg was qualified under *Witherspoon. Moore v. State,* supra. Ground of error number three is overruled.

Ground of error number four complains of the admission into evidence of photographs taken of the deceased in the morgue after the killing. The photographs, taken before the autopsy, show the location of the wounds and were admissible under *Martin v. State,* 475 S.W.2d 265 (Tex.Cr.App.1972). No error is shown.

In ground of error number five, he contends that the trial court erred in refusing to admit into evidence at the preliminary competency to stand trial hearing an affidavit by Dr. Jackson Speegle regarding his mental condition. He argues that the affidavit was admissible to show his state of mind and he relies on Article 3726, V.A.C.S. His contention is without merit.

The affidavit in question was dated August 15, 1960, and states that appellant was a schizophrenic. The State's objection that the affidavit was hearsay and was not authenticated or qualified under the provisions of Article 3737e, V.A.C.S., was properly sustained. The affidavit was more than fifteen years old and was of no material relevance in the instant case. There is no showing in the record that Dr. Speegle was unavailable or that any attempt had been made to subpoena him.

Ground of error number six urges that the trial court erred in the admission into evidence at the trial on the merits the judgment of the competency hearing. Such contention is without merit. Where testi-

1. See similar provision contained in Article 1257(d), V.A.P.C., 1925, as amended (Acts 1973, 63rd Leg., p. 1122, ch. 426—effective June 14, 1973 until January 1, 1974—effective date of present Penal Code.

mony is offered upon the main trial on the issue of insanity, the admission into evidence of the judgment in a preliminary sanity hearing is proper. *Wilkinson v. State,* 423 S.W.2d 311 (Tex.Cr.App.1968).

Ground of error number seven complains that the trial court should have submitted to the jury a charge during the punishment phase of the trial as to the issue of temporary insanity caused by intoxication. The charge submitted to the jury at the punishment stage of the trial properly instructed the jury as to the law of temporary insanity caused by intoxication as a mitigating fact. No error is shown.

In grounds of error numbers eight, nine, ten and fourteen appellant contends that the grand jury did not hear sufficient evidence before it returned the indictment and that the trial court should not have refused him a copy of the grand jury proceedings so that it could be included in the record on appeal.

The motion to quash the indictment was filed June 9, 1975, ten days after the trial was concluded. A grand jury may determine the nature and competency of any evidence presented to it and this Court cannot go behind the face of the indictment. *Carpenter v. State,* 477 S.W.2d 22 (Tex.Cr. App.1972).

There is no showing in this record that the grand jury testimony was ever recorded or transcribed nor has appellant shown a particularized need. No error is shown. *Hoffman v. State,* 514 S.W.2d 248 (Tex.Cr. App.1974). Grounds of error numbers eight, nine, ten and fourteen are overruled.

Ground of error eleven contends that the trial court should not have transferred this case from Criminal District Court No. 4 to Criminal District Court No. 1. The court has the power to transfer causes and there is no jurisdictional problem. *Bank v. State,* 503 S.W.2d 582 (Tex.Cr.App.1974). There was no challenge to the regularity of the transfer made at the time of the trial and no harm has been shown. Nothing is presented for review.

In grounds of error numbers twelve and thirteen, appellant contends that the death penalty is cruel and unusual punishment and that the juries and prosecutors are given too much discretionary authority. These contentions have been decided adversely to appellant by this Court in *Jurek v. State,* supra, and *Smith v. State,* 540 S.W.2d 693 (1976), and by the United States Supreme Court in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976).

Finally, in ground of error number fifteen, appellant contends that it was error for the trial court to admit certain statements made by the deceased to her roommate, Anita McCasland, outside his presence on the day of her murder. Many of the statements came in without objection. Even if the statements were hearsay, no reversible error was committed. The statements made earlier to her roommate are admissible to show that she was going to see appellant on a peaceful mission. *Corbett v. State,* 493 S.W.2d 940 (Tex.Cr.App. 1973); *Sherman v. State,* 428 S.W.2d 338 (Tex.Cr.App.1968); *Porter v. State,* 152 Tex.Cr. 540, 215 S.W.2d 889 (1948).

No reversible error having been shown, the judgment is affirmed.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

DALLY, Commissioner.

On motion for rehearing we have reconsidered the appellant's contention that he was deprived of a constitutional right to the testimony of a co-defendant who was acquitted after the appellant's conviction.

James E. Whitmore and Harrell Totty were indicted for the murder of Judy Carol Rummel. It was alleged that the appellant, for remuneration and the promise of remuneration, hired Totty to kill the deceased. A severance was requested and granted. Appellant was tried first, although he asked that Totty be tried first, and a jury returned a verdict of guilty of capital murder and assessed punishment at death; judgment was entered on May 30, 1975, and the appellant's motion for new trial was overruled July 10th.

Harrell Totty, who admitted he shot the deceased, was subsequently tried. The court charged the jury on the law of capital murder, murder, voluntary manslaughter, self-defense, and defense of a third person. On October 4, 1975, the jury returned a verdict of not guilty. On October 8, 1975, the appellant filed a motion for new trial and alleged as grounds newly discovered evidence. Appellant alleged that at the time of his trial he was denied the testimony of Totty, because Totty would have asserted his Fifth Amendment right and refused to testify. It was further alleged that since Totty had been acquitted his testimony was now available. The court overruled appellant's motion for new trial because it was filed after the time provided for filing such motions. See Art. 40.05, V.A.C.C.P.

At the hearing on the motion for new trial Totty's attorney testified that the appellant's attorney had requested that Totty testify at the appellant's trial. Totty's attorney stated that he advised appellant's attorney that Totty would assert his Fifth Amendment right and would not testify at appellant's trial. At the hearing appellant offered the testimony of Totty at his own trial to show what his testimony would have been if Totty had testified at appellant's trial. The court admitted a transcript of Totty's testimony as a bill of exception for the record on appeal.

Totty testified at his own trial that he was a member of the United States Air Force. His general duty was that of a security guard. He had secret clearance and on special occasions had guarded nuclear weapons and the President of the United States. With permission of the Air Force, he worked part-time as a security guard at the apartment complex where he and his family lived. While working as a security guard at the apartments he became acquainted with the appellant and his former girl friend, Judy Rummel, the deceased. The first time he saw the deceased he pulled her off the appellant because she was sitting on him and beating him with her fists. Totty testified that on another occasion the deceased was arrested by the police for breaking appellant's window. He had numerous complaints about both the deceased and the appellant and tried to get the manager to have the appellant evicted from the apartments. On another occasion he saw the deceased with her car try to run over the appellant and a girl friend. Because of all this trouble, the apartment manager instructed Totty that under no circumstances was the deceased to be allowed to be at the apartments and that he should check on appellant's apartment at least every hour.

Totty testified that on the night of the shooting he was making his rounds checking the apartments. He knocked on appellant's door and was told to come in. Appellant's door was unlocked and he did not see the deceased. Appellant was sitting on his couch. Totty asked to use the restroom and checked the back room to make sure the deceased was not present, because he remembered that he had not been checking appellant's apartment as he had been instructed to do. When he was coming out of the bedroom from using the restroom he heard the appellant shout, "Help, help. She's going to kill me." The deceased was about an arm's length from the appellant with a knife in her hand. He stated that deceased appeared crazed and out of her mind and that he was afraid for appellant's life and his own. He drew his gun and shot the deceased. He stated that when he shot her he was too far away to physically stop her and that he was afraid, if he did not shoot, she would attack him and would have killed the appellant. Totty further testified that he had not agreed to kill or discussed killing Judy Rummel with appellant; that he had not received any money or the promise of anything from Whitmore or anyone else to kill her. He stated that he was sorry that the killing occurred but that there was no way he could have avoided it.

■ A trial court has considerable discretion in granting or denying a new trial in which newly discovered evidence may be admitted. To show that the court abused its discretion by not granting a new trial,

the record must reflect that: (1) the newly discovered evidence was unknown to the movant at the time of his trial; (2) the movant's failure to discover the evidence was not due to his want of diligence; (3) the materiality of the evidence is such as would probably bring about a different result on another trial; and (4) the evidence is admissible and is not merely cumulative, corroborative, collateral, or impeaching. *Hernandez v. State*, 507 S.W.2d 209 (Tex. Cr.App.1974); *Myers v. State*, 527 S.W.2d 307 (Tex.Cr.App.1975); *Williams v. State*, 504 S.W.2d 477 (Tex.Cr.App.1974).

■ The testimony of Harrell Totty was known to the appellant before his trial and is not in the usual meaning of the words newly discovered; however, it was newly available evidence. A defendant may not call as a witness a co-defendant who has indicated he will assert his privilege against self-incrimination under the Fifth Amendment of the United States Constitution. *Rodriguez v. State*, 513 S.W.2d 594 (Tex.Cr. App.1974); *Glasper v. State*, 486 S.W.2d 350 (Tex.Cr.App.1972); *Victoria v. State*, 522 S.W.2d 919 (Tex.Cr.App.1975); *United States v. Roberts*, 503 F.2d 598 (9th Cir. 1974) cert. denied 419 U.S. 1113, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975); *United States v. McKinney*, 453 F.2d 1221 (9th Cir. 1972). However, after the witness has been convicted or acquitted that witness' testimony then becomes available. *United States v. Hoffman*, 385 F.2d 501 (7th Cir. 1967). See *Brumfield v. State*, 445 S.W.2d 732 (Tex.Cr. App.1969); *Franco v. State*, 491 S.W.2d 890 (Tex.Cr.App.1973); *Cherb v. State*, 472 S.W.2d 273 (Tex.Cr.App.1971). Also, a witness may change his mind and, while represented by counsel, elect to waive that right and testify. Thus, it has been held that the witness then becomes the source of new factual information not otherwise previously available. *United States v. Guillette*, 404 F.Supp. 1360 (D.C.Conn.1975).

■ This Court has long recognized that newly available evidence is the same as newly discovered evidence. Under our prior laws,[1] which have been repealed[2] and held unconstitutional,[3] principals, accomplices, or accessories could not testify on behalf of each other. Where two people were jointly or separately indicted for an offense arising from the same incident, and one was tried and convicted, and subsequently the other was tried and acquitted, a new trial was granted the former to enable him to obtain the testimony of the latter, where it appeared that the new evidence which the law had formerly placed beyond his reach was admissible and material to his defense. Branch's Penal Code, Sec. 762 (2d ed. 1956) which cites numerous cases in support of the rule stated, including, e. g., *Lyles v. State*, 41 Tex. 172 (Tex.App.1874); *Rucker v. State*, 7 Tex.App. 549 (1880); *Sylvas v. State*, 68 Tex.Cr. 117, 150 S.W. 906 (1912). As this Court stated in *Barker v. State*, 73 Tex.Crim. 229, 164 S.W. 383 (1914):

> "It is well settled that if, after the defendant is tried and convicted, his co-defendant is tried and acquitted, the testimony of the latter is held to be newly discovered."

The difference between this situation and that in the case at bar is that in the former the testimony was not available because a statute made the witness incompetent, while in the latter the testimony is unavailable because of the witness' constitutional rights.

There is no doubt that the testimony of Totty was newly available evidence after the jury at his trial acquitted him. The appellant could not be charged with a want of diligence. Although it was probably unnecessary to do so to preserve error, he attempted to obtain at the time of his trial the testimony of Totty. From our discussion of the testimony of Totty given at his own trial, there is no doubt that his testimony would be admissible and not merely

---

1. Art. 711, V.A.C.C.P. (1925); Art. 82, V.A.P.C. (1925).

2. Art. 36.09, V.A.C.C.P. (1965).

3. *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

cumulative, corroborative, collateral, or impeaching; and that its materiality was such as would probably bring about a different result on another trial. If appellant had filed his motion for new trial based on newly discovered evidence within the time provided by our Code of Criminal Procedure, we would have held that it was an abuse of discretion to deny appellant a new trial. Therefore, the question is whether an accused's right to compulsory process under the Sixth Amendment of the United States Constitution and the Texas Constitution is superior and should override a valid provision of our Code of Criminal Procedure.

■ The Supreme Court of the United States, in the case of *Washington v. Texas*, 388 U.S. 24, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), was faced with a conflict between an accused's right to compulsory process and a state statute which prevented his co-defendant from testifying on behalf of the accused. The Court held that the right of an accused to have compulsory process for obtaining witnesses in his favor, guaranteed by the Sixth Amendment, is so fundamental and essential to a fair trial that it is incorporated in the Due Process Clause of the Fourteenth Amendment. The Court said:

"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."

The Court held that Washington was denied his right to compulsory process because the State arbitrarily denied him the right to call a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense.

· In *Braswell v. Wainwright*, 463 F.2d 1148 (5th Cir. 1972), the Fifth Circuit relying on *Washington v. Texas*, supra, stated that "when a state procedural rule comes into conflict with a fundamental constitutional right it is clear that the state rule must yield." In *Braswell*, the "rule" was invoked regarding the sequestration of witnesses who intended to testify. A defense witness violated the "rule" by remaining in the courtroom during the presentation of the state's case. The Court of Appeals reversed and ordered a new trial. The Court discussed at length the excluded testimony which clearly showed that his testimony was crucial to the appellant's claim of self-defense. While the Court noted that Federal Courts are reluctant to strike down valid procedural rules, the Court held that in these particular and extraordinary circumstances the exclusion of the appellant's sole corroborating witness denied the appellant his Sixth Amendment right, and rendered his trial fundamentally unfair.[4]

■ At the time of appellant's trial, the appellant's constitutional right to compulsory process was in direct conflict with Harrell Totty's constitutional right against self-incrimination. The weight of authority appears to be that the privilege against self-incrimination is the superior right. *Rodriguez v. State*, supra; *Glasper v. State*, supra; *United States v. Roberts*, supra; *United States v. McKinney*, supra; cf. *Victoria v. State*, supra. In order for appellant to receive the full benefit of his constitutional rights we will review this claim as it stood at the time he filed his motion for new trial based on newly available evidence, because at that time the conflict of constitutional rights was no longer present due to Totty's acquittal.

The case at bar does not present a question of lack of diligence in asserting this

4. We note that *Braswell* involved a rule of evidence, while the case at bar concerns a valid statute governing the time for filing motions for new trial; however, neither can be applied so as to deprive an accused of a right secured by the Constitution.

constitutional right. The record reflects that appellant's attorney attempted to have Totty testify at appellant's trial but that he could not compel Totty to testify. Totty's testimony was therefore not available until after October 4, 1975. Four days later, on October 8, 1975, appellant filed his motion for new trial based on newly discovered evidence.

■ We cannot say that the failure to grant appellant a new trial is harmless. As noted earlier, one of the most important factors in determining whether the trial court abused its discretion by failing to grant a new trial based on newly discovered evidence is whether "its materiality was such as would probably bring about a different result on another trial." *Hernandez v. State*, supra. Other cases have stated that it must be shown that "the new evidence was probably true, and that such evidence would probably produce a different result at another trial." *Myers v. State*, supra.

V.T.C.A. Penal Code, Sec. 19.03 (Capital Murder), states that:

"(a) A person commits an offense if he commits murder as defined under Section 19.02(a)(1) of this code and;

\*    \*    \*    \*    \*    \*

"(3) the person commits the murder for remuneration or the promise of remuneration or employs another to commit the murder for remuneration or the promise of remuneration; \* \* \*"

■ The appellant was convicted of capital murder and sentenced to death because the jury found that he hired Harrell Totty to kill Judy Rummel. The appellant and Totty were the only persons present at the time Judy Rummel was killed. The jury that convicted the appellant did not hear the testimony of Totty. Totty's trial was held after appellant's. At his trial Totty

testified in his own behalf. The jury apparently believed Totty's testimony and acquitted him. Therefore, it is beyond dispute that the appellant was harmed by not being granted a new trial after Totty was acquitted and at a point in time when he could have compelled Totty to testify.[5]

The appellant was deprived of the full benefit of his constitutional right to compulsory process guaranteed by the Sixth and Fourteenth Amendments of the Constitution of the United States. In the circumstances of this case our Code of Criminal Procedure provision governing the time for filing of motions for new trial must yield to the appellant's superior constitutional rights. Accordingly, the appellant's motion for new trial that alleged as grounds newly available testimony should have been granted.

■ Our decision in this case does not overrule the cases stating the general rule that an untimely motion for new trial should not be heard by the trial court. See e. g. *Jones v. State*, 501 S.W.2d 677 (Tex.Cr.App.1973); *Morton v. State*, 502 S.W.2d 121 (Tex.Cr.App.1973); *Morales v. State*, 458 S.W.2d 56 (Tex.Cr.App.1970); *Nelson v. State*, 464 S.W.2d 834 (Tex.Cr.App.1971); *Roberts v. State*, 493 S.W.2d 849 (Tex.Cr. App.1973); *Boykin v. State*, 516 S.W.2d 946 (Tex.Cr.App.1974); *Morgan v. State*, 519 S.W.2d 449 (Tex.Cr.App.1975); *Allen v. State*, 536 S.W.2d 364 (Tex.Cr.App.1976). However, in some cases where an accused's constitutional rights are in conflict with a valid procedural rule of law the procedural rule must yield to the superior constitutional right. Also, in this case, the facts show good cause for a late filing of the motion for new trial. See Article 40.05, V.A.C.C.P. At no time during the statutory period for filing motions for new trial could the appellant have raised the issue presented here, because during that period of time Totty

---

5. For a few cases which discuss facts that have been held to show or not show harm because an accused was deprived of the testimony of a witness, see and compare, *United States v. Curran*, 465 F.2d 260 (7th Cir. 1972); *Zerschausky v. Beto*, 396 F.2d 356 (5th Cir. 1968)

cert. denied 393 U.S. 1004, 89 S.Ct. 493, 21 L.Ed.2d 468; *Ex parte Kirk*, 478 S.W.2d 503 (Tex.Cr.App.1972); *Ex parte Columbus*, 489 S.W.2d 562 (Tex.Cr.App.1973); *Ex parte Turner*, 542 S.W.2d 187 (Tex.Cr.App.1976).

had not been tried and was unavailable as a witness. Even though the motion for new trial was not granted, the careful trial judge undoubtedly recognized the conflict between the accused's constitutional rights and the statutory provision and permitted appellant's counsel to perfect the record. Therefore, the appellant here need not be relegated to habeas corpus relief. A constitutional question similar to the one presented here was raised in *Jones v. State*, supra. However, in that case, the co-defendant, whose testimony Jones alleged he was deprived of, was available to testify at the time of trial because he had already been convicted of the offense in question. Therefore, had Jones exercised diligence, he could have compelled the co-defendant to testify at any time during the trial. Also, Jones could have raised his constitutional question in a *timely* motion for new trial. Jones still had the right to seek habeas corpus relief when all of the facts could be more fully developed than they were developed in his motion for new trial.

For the reasons stated, appellant's motion for rehearing is granted, the judgment is reversed and the cause remanded.

Opinion approved by the Court.

### DISSENTING OPINION ON APPELLANT'S MOTION FOR REHEARING

DOUGLAS, Judge.

The majority holds that appellant was denied his constitutional right to the testimony of co-defendant Totty and reverses.

Totty was acquitted subsequent to appellant's conviction and prior to his motion for new trial. Appellant alleged in the motion that at the time of his trial he was deprived of Totty's testimony because Totty would have asserted his privilege against self-incrimination and refuse to testify.

At the hearing on the motion for new trial, it was established that appellant's attorney had requested that Totty testify at appellant's trial. Although Totty's attorney testified that he advised appellant's attorney that Totty would assert his privilege at appellant's trial, Totty himself never asserted the privilege nor indicated he would refuse to testify.

It should not have to be explained to the majority that the privilege against self-incrimination is personal to the witness and can be asserted only by him. *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141; *Rogers v. United States*, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951), rehearing denied 341 U.S. 912, 71 S.Ct. 619, 95 L.Ed. 1348; *Sharp v. United States*, 410 F.2d 969 (5th Cir. 1969); *United States v. Goodwin*, 470 F.2d 893 (5th Cir. 1972), cert. denied 411 U.S. 969, 93 S.Ct. 2160, 36 L.Ed.2d 691; *Glasper v. State*, 486 S.W.2d 350 (Tex.Cr.App.1972); *Cherb v. State*, 472 S.W.2d 273 (Tex.Cr.App.1971). Not even the witness' attorney may claim the privilege for him. *United States v. Moore*, 485 F.2d 1165 (5th Cir. 1973); *Ex parte Miers*, 124 Tex.Cr.R. 592, 64 S.W.2d 778 (Tex.Cr.App.1933); 8 Wigmore, Evidence, Section 2272 at 426 (McNaughton rev. 1961). Furthermore, the privilege may not be asserted in advance of questions actually propounded to the witness. It must be asserted with respect to particular questions, and in each instance the court must determine the propriety of the refusal to testify. *United States v. Malnik*, 489 F.2d 682 (5th Cir. 1974), cert. denied 419 U.S. 826, 95 S.Ct. 44, 42 L.Ed.2d 50; *Farmer v. State*, 491 S.W.2d 133 (Tex.Cr.App.1973). Thus, "a simple blanket declaration by the witness that he cannot testify for fear of self-incrimination will not suffice to invoke the privilege . . . .; the mechanism of the Fifth Amendment is not automatic or self-winding." *United States v. Gomez-Rojas*, 507 F.2d 1213 (5th Cir. 1975), cert. denied 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42. See also *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).

In discussing Totty's testimony in the instant case, the majority correctly states, "[a] defendant may not call as a witness a co-defendant who has indicated he will assert his privilege against self-incrimination under the Fifth Amendment of the United

States Constitution. *Rodriguez v. State,* 513 S.W.2d 594 (Tex.Cr.App.1974); *Glasper v. State,* 486 S.W.2d 350 (Tex.Cr.App.1972); *Victoria v. State,* 522 S.W.2d 919 (Tex.Cr.App.1975); *United States v. Roberts,* 503 F.2d 598 (9th Cir. 1974), cert. denied 419 U.S. 1113, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975); *United States v. McKinney,* 453 F.2d 1221 (9th Cir. 1972)." However, a review of those authorities reveals that the co-defendant witness in each case properly invoked the privilege before the court determined that the co-defendant would not be compelled to testify. *Rodriguez v. State,* supra; *Glasper v. State,* supra; *Victoria v. State,* supra; *United States v. Roberts,* supra; *United States v. McKinney,* supra.

In the case at bar, therefore, appellant's constitutional right to compulsory process was not in conflict with co-defendant Totty's constitutional right against self-incrimination. The declarations made by Totty's attorney concerning what Totty might or would have done if he had been called to testify at appellant's trial did not present the trial court with a problem of constitutional dimensions. Even Totty was not the exclusive judge of his right to exercise the Fifth Amendment privilege; the judge was entitled to determine whether any refusal to answer particular questions appeared to be based upon the good faith of the witness and was justifiable under all of the circumstances. *United States v. Gomez-Rojas,* supra; *Ex parte Butler,* 522 S.W.2d 196 (Tex. 1975).

The court never had the opportunity to make such a determination. Since Totty never invoked his Fifth Amendment privilege, appellant's right to compulsory process was not opposed. Accordingly, the court correctly overruled appellant's motion for new trial because it was filed after the time provided for filing such motions. See Article 40.05, V.A.C.C.P. Appellant's motion for rehearing should be overruled.

ONION, P. J., joins in this dissent.

En Banc.

## OPINION ON STATE'S MOTION FOR REHEARING

ODOM, Judge.

The State's motion for leave to file a motion for rehearing was granted and after reconsideration we overrule the State's motion for rehearing, having decided that the matter was properly disposed of in the majority opinion by then Commissioner Dally delivered April 4, 1977.

When this case was originally heard and decided, this Court consisted of five Judges. At that time Judge Vollers was State's Attorney and actively participated in the appeal of this case. Accordingly, pursuant to Article 5, Sec. 11, of the Texas Constitution, Judge Vollers certified his disqualification to the Honorable Dolph Briscoe, Governor of the State of Texas, who then appointed the Honorable Thomas M. Reavley, a former Associate Justice of the Supreme Court of Texas, to replace the Honorable Judge Vollers to hear and determine the State's motion for rehearing in this appeal.

The State's motion for rehearing is overruled.

ROBERTS, PHILLIPS and DALLY, JJ., and REAVLEY, Special Judge, join in this opinion.

REAVLEY, Special Judge, concurring.

I join the four Judges in overruling the State's motion for rehearing, but my decision is not based upon the Sixth Amendment to the United States Constitution. My decision is based upon the nature of the newly discovered evidence in this death case; it entitles appellant to a new trial.

The trial court overruled appellant's motion for new trial because it was untimely filed. Article 40.05, V.A.C.C.P., provides that ". . . for good cause shown the time for filing or amending may be extended by the court . . ." The sufficiency of the evidence of "good cause" is subject to review on appeal. *Robinson v. State,* 505 S.W.2d 298 (Tex.Cr.App.1974); see *Kilpatrick v. State,* 85 Tex.Cr.R. 172, 211 S.W. 230 (1919); cf. *Clopton v. State,* 563 S.W.2d 930 (Tex.Cr.App.1978). Appellant filed his

motion only four days after the testimony of Harrell Totty first became available. Good cause for late filing of the motion is established.

The newly acquired evidence of an acquitted co-defendant has been held to require a new trial in a number of cases. See *Rozell v. State*, 502 S.W.2d 16, 18 (footnote 1) (Tex.Cr.App.1973).

In *Rucker v. State*, 7 Tex.App. 549 (1880), the Court held that where two are jointly indicted, and one is tried and convicted, and subsequently the other is tried and acquitted, a new trial will be granted the former to obtain the testimony of the latter, where it appears that the new evidence is legal, competent and material to the convicted defendant's defense. The *Rucker* decision was followed in *Gibbs v. State*, 30 Tex.App. 581, 18 S.W. 88 (1891), and in *Chumley v. State*, 32 Tex.Cr.R. 255, 26 S.W. 406 (1893).

*Rucker* and *Gibbs* were followed by the Court in *Sanders v. State*, 52 Tex.Cr.R. 465, 107 S.W. 839 (1908). In that case the defendant was convicted of manslaughter upon an indictment charging her with murder. The defendant herself did not shoot the deceased, but the case was tried and submitted to the jury on the theory that she had conspired with her brother, who was alleged to have fired the fatal shot that resulted in the death of the deceased. The defendant was tried first and convicted. Her brother, indicted for the same offense, could not and did not testify. After the conviction of the defendant, her brother was tried and acquitted of the same offense as that for which his sister had been convicted. The defendant then made a motion for new trial, setting up the facts of the acquittal of her brother, that his testimony was and would be material to her defense, and that she was denied the benefit of his testimony by reason of the pendency of the indictment against him. The motion for new trial set out at great length the testimony to be given by the brother. The Court held there was no doubt as to the materiality of this new testimony and found reversible error in the trial court's overruling of the motion for new trial.

The Court recited and followed the rule of the *Rucker* case:

> There can be no doubt at this day as to the rule or the correctness of the rule in proper cases, as now established in this State, that where two are jointly indicted, and one is tried and convicted, and subsequently the other is tried and acquitted, a new trial will be granted the former to obtain the testimony of the latter, where it appears that the new evidence is legal and competent and material to his defense. *Sanders*, 107 S.W. 840.

The *Sanders* Court also relied upon the *Gibbs* decision, noting that it involved a conviction for murder and subsequent reversal thereof on the sole ground that the defendant in that case had been denied the testimony of a co-defendant who had subsequently been acquitted. The Court stated that the *Gibbs* decision ". . . is precisely in point and authority for our action in this case." *Id.*

In *Sylvas v. State*, 68 Tex.Cr.R. 117, 150 S.W. 906 (1912), the defendant and one Franco were indicted for murder. The defendant was convicted, and Franco was later tried and acquitted. After Franco's acquittal, the defendant made a motion for new trial. An affidavit was attached to the motion showing that Franco testified upon his trial that he had killed the deceased and that the defendant had nothing to do with it. The Court noted that Franco could not testify at the time of the defendant's trial, but that subsequent to the defendant's conviction, Franco had been tried and acquitted. The Court then summarized the facts set out in Franco's affidavit which was attached to the defendant's motion for new trial. In substance, the affidavit recited that Franco would have testified positively that defendant had nothing to do with the alleged murder, that Franco killed the deceased in self-defense, and that his jury took his view and acquitted him. Applying *Rucker*, *Gibbs* and their progeny, the Court noted that Franco's testimony was very material to the defendant and that the trial court should have awarded a new trial under the authority of those decisions.

In *Barker v. State*, 73 Tex.Cr.R. 229, 164 S.W. 383 (1914), the defendant was convicted of receiving and concealing stolen property. The State's case was established by the testimony of a confessed accomplice. He testified that he and others burglarized a house, that the defendant knew of this burglary, and subsequently received the stolen goods. One of the accomplice's cohorts, Decherd, was still in jail when the appellant was convicted on June 27. On July 1, after appellant's conviction, Decherd was discharged from custody and relieved of prosecution. The defendant obtained his statement in writing and it contradicted the accomplice's testimony on all points. This statement was appended to defendant's motion for new trial. Following the rule laid down in the *Rucker* case, the Court held that the defendant was entitled to a new trial. At the time of the *Barker* decision, a motion for new trial had to be made within two days after conviction, but for good cause shown, the trial court could allow the motion to be made at any time before adjournment of the term at which the conviction was had. The question of timeliness was not discussed in the *Barker* decision, but it is apparent that the motion was untimely filed. The Court did state that the first opportunity the defendant had to avail himself of Decherd's testimony was after the State had discharged him from custody; that Decherd's testimony could not be used by the defendant until after he was discharged; that this occurred on the 1st of July, after defendant's conviction on the 27th of June; and that the defendant procured Decherd's affidavit and made the showing at the earliest practicable moment.

In *Denning v. State*, 120 Tex.Cr.R. 122, 48 S.W.2d 643 (1932), the defendant and another were indicted for the possession of intoxicating liquor for the purpose of sale. Some two weeks after the appellant's conviction, his companion was tried and acquitted. Thereupon, the defendant filed a motion for new trial so that he might have the benefit of the testimony of his companion. In applying the rule of the *Rucker* case, the Court affirmed the judgment because the evidence expected from the acquitted individual was not contained in the record.

These cases were decided at the time when the Texas statute prevented the co-defendant from testifying on behalf of the accused. That statute was held to be an unconstitutional infringement upon the Sixth Amendment right of an accused to have compulsory process for obtaining witnesses in his favor in *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). We do not have state action preventing Whitmore from obtaining the testimony of Totty at the original trial, but we do have newly available evidence that may change the conviction or punishment assessed Whitmore. I would not hold that Whitmore has a constitutional right to the testimony of Totty and to a new trial. I would hold that Whitmore's motion does state grounds for ·a new trial under the general rules of newly discovered or available evidence.

In deciding the motion, and in treating the procedural flaws in the present record, the overriding consideration to me is that James E. Whitmore should not be sent to his death without his peers weighing the testimony of Harrell Totty—the man who was alleged to have killed Judy Rummel at Whitmore's hiring—but who has been freed and absolved from all crime.

It would be my preference to abate this appeal and to allow the appellant an opportunity to put his motion for new trial in proper form before the trial court considers the motion on its merits. I would permit this liberality towards procedural requirements because this is a death case. The other Judges elect either to reject appellant's appeal or to order a new trial. Given that choice, I join in ordering the new trial and overruling the State's motion for rehearing.

VOLLERS, J., not participating.

DOUGLAS, Judge, dissenting.

On appellant's motion for rehearing the majority held that he was denied his constitutional right to the testimony of co-defendant Totty. Totty had been acquitted

subsequent to appellant's conviction but prior to his motion for new trial. Appellant alleged in the motion that at the time of his trial he was deprived of Totty's testimony because Totty would have asserted his privilege against self-incrimination and refused to testify.

At the hearing on the motion for new trial, it was established that appellant's attorney had requested that Totty testify at appellant's trial. Although Totty's attorney testified that he advised appellant's attorney that Totty would assert his privilege at appellant's trial, Totty himself never asserted the privilege nor indicated he would refuse to testify.

Appellant's motion for new trial was filed after the time provided for filing such motions. See Article 40.05, V.A.C.C.P. The majority held that appellant was denied his right to compulsory process and that, under these circumstances, the Texas Code of Criminal Procedure provision governing the time for filing of motions for new trial must yield to appellant's superior constitutional rights. The majority further held that the motion for new trial that alleged as grounds newly available testimony should have been granted.

The majority opinion, on rehearing, relied on *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), and *Braswell v. Wainwright*, 463 F.2d 1148 (5th Cir. 1972). In *Washington*, the Supreme Court of the United States was confronted with the question whether the Sixth Amendment right to have compulsory process for obtaining witnesses in his favor is applicable to the states through the Fourteenth Amendment, and whether that right was violated by a state procedural statute providing that persons charged as principals, accomplices, or accessories in the same crime cannot be introduced as witnesses for each other.

Determining that the Sixth Amendment right to compulsory process is incorporated into the Due Process Clause of the Fourteenth Amendment, the Court wrote:

"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." 87 S.Ct. at 1923.

The Court held that the state statute in question violated the petitioner's constitutional rights because it "arbitrarily denied him the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense." 87 S.Ct. at 1925. But the Court stressed that the statute was invalid because it *arbitrarily* prevented whole categories of defense witnesses from testifying on the basis of prior categories that presumed them unworthy of belief. The Court implied that it would have had greater difficulty in striking down the state rule if the accused accomplice would have been absolutely prohibited from testifying. It pointed out that the rule permitted the accomplice to be called by the prosecution to testify against the defendant, or to testify for the defendant after he was acquitted at his own trial. Common sense suggested that an accomplice often has a greater interest in lying in favor of the prosecution rather than against it, in order to obtain leniency from the prosecution.

Justice Harlan, in his concurring opinion, stated that that case did not implicate the right to compulsory process in any manner. In his view, the case was one in which the State of Texas had recognized as relevant and competent the testimony of an accomplice witness but had arbitrarily barred its use by the defendant and that this violated the Due Process Clause.

In *Braswell*, the "rule" regarding the sequestration of witnesses who intended to testify was invoked. A defense witness

violated the rule by remaining in the courtroom during the State's case-in-chief. As a result the witness was not permitted to testify.

The United States District Court for the Southern District of Florida granted Braswell relief in a habeas corpus proceeding. Upon the State's appeal, the Court of Appeals noted that the excluded testimony was crucial to Braswell's claim of self-defense (he had been convicted of aggravated assault). The Court stated that federal courts are reluctant to strike down valid state procedural rules, but held that application of the rule in question under these circumstances—where the excluded witness was Braswell's sole corroborating witness—violated his constitutional right to compulsory process. In affirming the district court, the Court relied on *Washington v. Texas*, supra.

The instant case is readily distinguishable from the *Washington* and *Braswell* cases. In the latter two cases, the state procedural rules in question operated to exclude competent evidence to the detriment of the defendant. Those rules were thus in direct conflict with the defendants' constitutional right to compulsory process.

In contrast, the rule governing the time for filing of motions for new trial in no manner pertains to the admission or exclusion of evidence or to the availability of witnesses. The State did not use this rule to arbitrarily prevent key defense witnesses from testifying, as occurred in *Washington*. Here, appellant chose not to call Totty at trial. The State did not prevent him from testifying.

Moreover, there was *no conflict* between the application of this procedural rule and appellant's right to compulsory process. The only conflict *possibly* extant was between appellant's Sixth and Fourteenth Amendment rights and Totty's Fifth Amendment privilege against self-incrimination. Although such apparent conflict between the constitutional rights of the co-defendants was not resolved until after appellant's trial, this did not implicate the Due Process Clause, particularly in light of the fact that there was no real conflict between such constitutional rights in the first place for reasons which follow.

The privilege against self-incrimination is personal to the witness and can be asserted only by him. See *Rogers v. United States*, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951); *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); *United States v. Gomez-Rojas*, 507 F.2d 1213 (5th Cir. 1975). Not even the witness' attorney may claim the privilege for him, as Totty's attorney attempted to do here. *United States v. Moore*, 485 F.2d 1165 (5th Cir. 1973); *Ex parte Miers*, 124 Tex.Cr.R. 592, 64 S.W.2d 778 (1933); 8 Wigmore, Evidence, Section 2272 at 426 (McNaughton rev. 1961). Furthermore, the privilege may not be asserted in advance of questions actually propounded to the witness. It must be asserted with respect to particular questions, and in each instance the court must determine the propriety of the refusal to testify. *United States v. Malnik*, 489 F.2d 682 (5th Cir. 1974); *Farmer v. State*, 491 S.W.2d 133 (Tex.Cr.App.1973). Thus, "a simple blanket declaration by the witness that he cannot testify for fear of self-incrimination will not suffice to invoke the privilege . . . ; the mechanism of the Fifth Amendment is not automatic or self-winding. . . . Once the Court satisfies itself that the claim is well-grounded as to the testimony desired, it may, in its discretion, decline to permit either party to place the witness on the stand for the purpose of eliciting a claim of privilege or to comment on this circumstance." *United States v. Gomez-Rojas*, supra, at 1219, 1220.

In the instant case, therefore, appellant's constitutional right to compulsory process was not in conflict with Totty's constitutional right against self-incrimination. The declarations made by Totty's attorney concerning what Totty might have done or would have done if he had been called to testify presented no problem of constitutional dimensions. Even Totty was not the exclusive judge of his right to exercise the Fifth Amendment privilege; the judge was entitled to determine whether any refusal

to answer particular questions appeared to be based upon the good faith of the witness and was justifiable under all of the circumstances. *United States v. Gomez-Rojas*, supra; *Ex parte Butler*, 522 S.W.2d 196 (Tex. 1975).

The trial court never had the opportunity to make such a determination. Since Totty never invoked his Fifth Amendment privilege, appellant's right to compulsory process was not opposed. Accordingly, the court correctly overruled appellant's motion for new trial because it was filed after the time provided for filing such motions. See Article 40.05, supra. The rationale of the *Washington* and *Braswell* cases is not applicable under these circumstances.

*Zerschausky v. Beto*, 396 F.2d 356 (5th Cir. 1968), cert. denied 393 U.S. 1004, 89 S.Ct. 493, 21 L.Ed.2d 468 (1968), involved a proceeding on petition for writ of habeas corpus.

In April of 1963, Zerschausky had been convicted in a Texas district court for murder with malice and was sentenced to thirty years. Three potential witnesses at his trial had been charged as accessories and did not testify. Their charges were dropped shortly thereafter.

Zerschausky took no appeal from his conviction, but in 1966 he filed a petition for writ of habeas corpus in the same state district court which granted the writ returnable before this Court. We denied relief. *Ex parte Zerschausky*, 417 S.W.2d 279 (Tex.Cr.App.1967). Zerschausky then filed a petition for writ of habeas corpus in federal district court. The district court conducted a thorough factual investigation and thereafter handed down an extensive memorandum opinion denying relief. 274 F.Supp. 231 (Western District, Tex.1967).

On appeal, Zerschausky relied on *Washington v. Texas*, supra, which had held unconstitutional the Texas statutes denying defendants the right to call as witnesses anyone under indictment as accessories to the crime. The Court of Appeals determined that *Washington* was distinguishable and affirmed the district court.

The Court observed that no testimony by accessories was offered at Zerschausky's trial. The testimony which would have been given by the accessories would have conflicted in several respects with Zerschausky's theory of self-defense. The Court further observed that *Zerschausky had waited to complain until charges had been dropped against the accessories and until the statute of limitations had run.*

The Court reasoned from the foregoing that Zerschausky's failure to call the accessories to the stand was the result of a voluntary and conscious decision in trial strategy, not mere obedience to the Texas statute. Thus he had waived his constitutional right to compulsory process. See also *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

Likewise, in the present case appellant never offered the testimony of Totty at the hearing on the motion for new trial. Hence, his constitutional right to compulsory process was waived. The facts in this case withdraw it from the reach of *Washington v. Texas*, supra.

Even assuming the rule governing filing of motions for new trial did conflict in some manner with appellant's constitutional rights, it should be observed that not all state procedural rules must yield to an assertion of such rights. Otherwise, the decisions holding that failure to object to the violation of certain constitutional rights waives the error would be invalid. See, e. g., *Boulware v. State*, 542 S.W.2d 677 (Tex. Cr.App.1976), which held that failure to object to Witherspoon error waives the error; this case could not stand if all procedural rules in conflict with the assertion of constitutional rights must fall. Likewise, the contemporaneous objection rule would fall in such circumstances with regard to errors of constitutional dimension.

The Court has promulgated a new rule which could result in chaos for our criminal justice system. The rule apparently can be used to invalidate any conviction where there is more than one defendant charged with the commission of an offense.

In the opinion on appellant's motion for rehearing, the majority observed that an accused may not call as a witness a co-defendant who will assert his privilege against self-incrimination. The majority then determined that the only requirement the accused must meet in regard to obtaining such testimony at the time of his trial is to ask the co-defendant's lawyer whether he (counsel) will advise the co-defendant to invoke the protection of the Fifth Amendment. This determination was erroneous for the reasons previously stated. The majority finally concluded that this Court will review a claim of newly discovered or newly available evidence as it stood at the time that appellant filed his motion for new trial based upon such evidence, even though the time for filing the motion had passed.

Under the majority's reasoning, an accused tried and convicted of murder may file a motion for new trial (even after his appeal apparently) claiming newly available evidence if the co-defendant has been convicted and if such conviction has become final. At that point, if the co-defendant is willing to give favorable testimony for the accused, then he is entitled to a new trial. If the accused was then inclined to reciprocate and give favorable testimony for the convicted co-defendant, the co-defendant would probably also be entitled to a new trial. Both defendants would have to be reprosecuted and, thus, the State would be back where it started since neither co-defendant could be compelled to testify for the other. Such a situation would clearly hinder the administration of justice.

For the reasons stated above, the State's motion for rehearing should be granted and the judgment affirmed.

ONION, P. J., and TOM G. DAVIS and W. C. DAVIS, JJ., join in this dissent.

VOLLERS, J., not participating.